826 A.2d 525

Herbert BROWN, et al.

v.

FIRE AND POLICE EMPLOYEES' RETIREMENT SYSTEM, et al.

No. 115, Sept. Term, 2002.

Court of Appeals of Maryland.

June 17, 2003.

662

Michael Marshall (Schlachman, Belsky & Weiner, P.A., on brief), Baltimore, for petitioners.

Wendy Widmann (Daneker, McIntire, Schumm, Prince, Goldstein, Manning & Widmann, P.C., on brief), Baltimore, for respondents.

Argued before BELL, C.J., ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA, JJ.

RAKER, J.

Petitioners, all former Baltimore City police officers, in a declaratory judgment action, ask this Court to decide whether

a "deferred retirement option plan" compensation retirement benefit is marital property pursuant to the Baltimore City Code (2000 Supp.) Article 22 [1] and the parties' judgments of divorce and qualified domestic relations orders. We granted certiorari, and we added the following additional questions:

"I. Whether actions for a declaratory judgment and injunctive relief, to determine whether certain benefits constituted marital property, were appropriate in this case.

"II. If an action for a declaratory judgment was appropriate, particularly in light of Maryland Code (1974, 2002 Repl.Vol.), Sections 3–409(b) and 3–409(d) of the Courts and Judicial Proceedings Article, whether the Circuit Court erred in ordering that the 'Amended Complaint is dismissed with prejudice. . . .' "

*Brown v. Ret. Sys.*, 372 Md. 685, 814 A.2d 571 (2003).

We conclude that actions for declaratory judgment were not appropriate in this case because petitioners failed to exhaust their statutory administrative remedies. We thus vacate the trial judge's dismissal and direct the Circuit Court to dismiss the matter for failure to exhaust administrative remedies.

## I. Facts

Petitioners Herbert Brown, Elmer Dennis, Edmund Lubinski, Joseph S. Moore, Robin Thacker, Dwight Thomas, Essex Weaver, Kenneth Welsh and Randolph E. Wynn, Jr. are current or retired officers with the Baltimore City Police Department. Respondents are the Fire and Police Employees' Retirement System ("Retirement System") and the Mayor and City Council of Baltimore City. Denise Brown, Catherine Dennis, Edna Sullivan, Adrienne Johnson, Barbara Thacker, Lorraine Thomas, Kathleen Weaver, Barbara Ann Dailey and Linda Pearlman, petitioners' former wives, also are respondents.

---

1. All statutory references, unless otherwise indicated, are to Baltimore City Code (2000 Supp.) Article 22.

Petitioners filed in the Circuit Court for Baltimore City on June 29, 1999, a Complaint for Declaratory and/or Injunctive Relief, seeking a declaration that their benefits under the City's Deferred Retirement Option Plan ("DROP") are not marital property and should be disbursed solely to them.[2] On April 19, 2000, petitioners filed an Amended Complaint for Declaratory and/or Injunctive Relief, joining their former spouses as necessary parties under Maryland Rule 2–211.[3] Respondents argued that the Circuit Court lacked jurisdiction to determine marital property and that the ex-spouses were entitled to a share of petitioners' DROP benefits. Motions by both sides for summary judgment were denied.

The Retirement System is a governmental pension plan offered by Baltimore City and is codified in Baltimore City Code (2000 Supp.) Article 22. The Retirement System provides several different types of benefits, including service retirement benefits, line-of-duty disability benefits, line-of-duty death benefits, ordinary disability benefits, and ordinary death benefits. Membership in the Retirement System is mandatory for all police employees as a condition of employment. § 31(1). The Retirement System is funded by the mandatory contributions of its members, by the contributions of Baltimore City, and by the System's investment earnings. All benefit-funding assets are held under the Retirement

---

**2.** Petitioners also filed a Motion for Certification of Class Action on behalf of all persons working in the Baltimore City Police Department who elected to participate in the DROP, who were divorced prior to July 1, 1999, and whose divorce decrees do not expressly address the DROP benefit, and whose former spouses may be entitled to a portion of their pensions from the Retirement System. The motion for class certification was later withdrawn.

**3.** Maryland Rule 2–211 states as follows:

"(a) Persons to be joined. Except as otherwise provided by law, a person who is subject to service of process shall be joined as a party in the action if in the person's absence (1) complete relief cannot be accorded among those already parties, or (2) disposition of the action may impair or impede the person's ability to protect a claimed interest relating to the subject of the action or may leave persons already parties subject to a substantial risk of incurring multiple or inconsistent obligations by reason of the person's claimed interest."

System's name and are managed by a Board of Trustees. The Board establishes rules and regulations for the administration of the Retirement System's funds and for the transaction of its business. § 33(g).

The Retirement System was amended in 1996 to add the DROP, effective July 1, 1996. § 36B. Members with at least twenty years of service under the Retirement System may elect to participate in the DROP for a maximum of three years. Eligible members who do not participate in the DROP may either retire and collect pension benefits, or continue to work and accrue service credit which will be used to calculate their retirement income.

The DROP consists of three components:

(1) An amount equal to the annual retirement allowance (or prorated annual retirement allowance for partial years) the member would have received if he had retired from service at that time and actually begun receiving his maximum retirement allowance;

(2) An amount equal to the mandatory contributions the member is required to make to the Retirement System for his retirement benefits; and,

(3) Interest at 8.25% compounded annually until the member actually retires.

§ 36B(d).

All mandatory contributions to the DROP are paid to the Board and commingled with all other contributions to the Retirement System. No actual separate account is established, and no funds are segregated. The Retirement System is a tax-qualified plan under the Internal Revenue Code. *See* 26 U.S.C. § 401(a) *et seq.* (2000). All DROP payments are reported to the IRS on Form 1099R as having been paid from the Retirement System. The Board takes the position that, if a qualifying court order requires payment to a former spouse of an employee-member of the Retirement System, a percentage of the Member's benefits under the System (the former spouse's portion) will be based on all of the benefits payable to the Member under the System, including the DROP.

During the period of DROP participation, the Member's regular pension is "frozen," i.e., the Member will not acquire new service credit toward the regular pension. At the conclusion of the DROP period, the Member's regular service retirement benefit remains the same as when he or she entered the DROP. Various forms of additional service credits and a bonus accrual can be earned after participating in the DROP.

Distribution of the DROP benefit depends on how and when the Member retires. If the Member elects an ordinary retirement, he or she may receive the DROP benefit as a lump sum or as part of the regular monthly annuity payment. No part of the DROP benefit is payable in the event of a line-of-duty disability or a line-of-duty death. In such cases, the Member or the qualifying beneficiary receives only the benefit otherwise payable under the Retirement System. § 36B(k) and (i).

The circuit court granted each couple a final judgment of absolute divorce from which no appeal was taken; the judgments of divorce had never been subject to a request for revision or modification. Under each judgment of divorce and, in most cases, a subsequently entered consent Qualified Domestic Relations Order ("QDRO") or Amended QDRO, each respondent was granted a share of her husband's pension benefits from the Retirement System "if, as and when" benefits become payable. Some of the parties also entered into settlement agreements that were incorporated into their judgments of divorce and that agreed to a division of the former husbands' benefits under the Retirement System "if, as and when" such benefits become payable.

Each petitioner was eligible to retire with a regular pension prior to the date of the divorce decree or QDRO, and each participated in the DROP. Most of the petitioners entered into their QDROs before the implementation of the DROP program in July 1996.[4] In a letter dated January 20, 1999, the

---

4. The circuit court entered divorce decrees and QDROs as to petitioners Dennis, Lubinski, Moore, Thacker, Thomas and Wynn before the City implemented the DROP. Weaver's QDRO was entered on January 4,

Retirement System informed each petitioner that a portion of the DROP benefits would be dispersed to each respondent as marital property under the terms of the respective judgment of divorce and QDRO. For example, the Retirement System's letter to petitioner Dwight Thomas reads as follows:

"In noting that you are presently a participant in the Deferred Retirement Option Plan (DROP), this office recently reviewed the Qualified Domestic Relations Order (QDRO) which you have on file with the Fire and Police Employees' Retirement System (F & P). Please be advised that because your QDRO does not direct the disposition of your DROP benefit, at the time of your retirement your ex-spouse will receive the marital property portion of any lump-sum payment made to you from your DROP account. If you do not wish your ex-spouse to receive the marital property portion of any lump-sum payment you may receive from your DROP account at the time of your retirement, your QDRO must specifically state this intention.

"For your convenience, we have included a copy of our model QDRO for the F & P. You should note that provisions throughout this Order address either the inclusion or exclusion of the member's DROP account."

As a result of the letters, petitioners filed their Complaint for Declaratory and/or Injunctive Relief with the Circuit Court.

In lieu of testimony, the Circuit Court received the parties' trial briefs, stipulations, and documentary evidence and heard oral argument in April 2001. Respondents asked for a dismissal of the amended complaint and a judgment that petitioners be required to pay DROP benefits to their former spouses in accordance with the orders in the divorce proceedings. In a written order issued April 11, 2001, the Circuit Court dismissed, with prejudice, the petitioners' complaint, but quixotically ordered the Retirement System to "treat all DROP benefits as ordinary pension benefits for the purposes of payments pursuant to the parties' Judgments of Divorce."

---

1996. Brown's QDRO was entered on May 20, 1997. Welsh's QDRO was entered on March 4, 1998.

Petitioners noted a timely appeal to the Court of Special Appeals. In an unreported opinion, that court affirmed the trial court's determination that the DROP should be treated as an ordinary pension benefit for the purposes of payments pursuant to the parties' judgments of divorce.[5] The officers filed a petition for a writ of certiorari, and we granted the petition.

## II. Discussion

■ This Court adheres firmly to the rule that statutorily prescribed administrative remedies ordinarily must be pursued and exhausted. *See, e.g., Moose v. Fraternal Order of Police,* 369 Md. 476, 492–93, 800 A.2d 790, 801 (2002); *Josephson v. City of Annapolis,* 353 Md. 667, 677, 728 A.2d 690, 695 (1998); *Comm'n on Human Rel. v. Mass Transit,* 294 Md. 225, 230, 449 A.2d 385, 387 (1982). Moreover, pursuant to the Uniform Declaratory Judgment Act, "[i]f a statute provides a special form of remedy for a specific type of case, that statutory remedy shall be followed in lieu" of a declaratory action proceeding. Maryland Code § 3–409(b) (1973, 2002 Repl.Vol.) of the Courts and Judicial Proceedings Article; *see Moose,* 369 Md. at 486, 800 A.2d at 796–797.

■ This principle that statutory administrative remedies normally must be exhausted is a policy embedded in various enactments by the General Assembly and is supported by sound reasoning. *See Mass Transit,* 294 Md. at 231, 449 A.2d at 388. The exhaustion doctrine enforces the notion that an administrative agency should have the opportunity to exercise its expertise first to resolve an issue. In *Soley v. State Commission on Human Relations,* 277 Md. 521, 526, 356 A.2d 254, 257 (1976), we observed as follows:

"The rule requiring exhaustion of administrative or statutory remedies is supported by sound reasoning. The decisions of an administrative agency are often of a discretionary nature, and frequently require an expertise which the

---

**5.** The intermediate appellate court did not address the Circuit Court's penultimate dismissal of the declaratory judgment action.

agency can bring to bear in sifting the information presented to it. The agency should be afforded the initial opportunity to exercise that discretion and to apply that expertise. Furthermore, to permit interruption for purposes of judicial intervention at various stages of the administrative process might well undermine the very efficiency which the Legislature intended to achieve in the first instance. Lastly, the courts might be called upon to decide issues which perhaps would never arise if the prescribed administrative remedies were followed."

Additionally, following the general rule, a party may appeal only from a *final* decision of an administrative agency. To effect this important public policy requiring exhaustion of administrative remedies, an appellate court ordinarily will notice the issue of exhaustion of statutory remedies on its own initiative even though the issue was not raised by the parties and even if the parties desire a decision on the merits. *See, e.g., Moose,* 369 Md. at 488, 800 A.2d at 797; *Mass Transit,* 294 Md. at 232, 449 A.2d at 388.[6]

Instructive is *Commission on Human Relations v. Mass Transit,* 294 Md. 225, 449 A.2d 385 (1982), where this Court held that the principle of exhaustion of administrative remedies barred an employer's declaratory judgment action seeking a statutory interpretation. The employer, the Mass Transit Administration (MTA), denied employment to three women, Jacquelin Wilson, Dorothea Goodman, and Betty R.

---

6. We have recognized a few limited exceptions to the requirement that administrative remedies be exhausted, but none apply here. *See Moose v. Fraternal Order of Police,* 369 Md. 476, 489, 800 A.2d 790, 798 (2002). One exception to the exhaustion requirement arises in some actions challenging the facial validity of a statute. *See Comm'n on Human Rel. v. Mass Transit,* 294 Md. 225, 232, 449 A.2d 385, 388 (1982). The requirement also may not apply when the Legislature expresses an intent that the administrative remedy need not be invoked and exhausted. *See id.* at 232 n. 4, 449 A.2d at 388 n. 4. We have also recognized that exhaustion of administrative remedies may not be required when an agency is palpably without jurisdiction. *See Comm'n on Human Relations v. Freedom Express/Domegold, Inc.,* 375 Md. 2, 825 A.2d 354 (2003); *SEFAC Lift & Equipment Corp. v. Mass Transit,* 367 Md. 374, 382, 788 A.2d 192, 197 (2002).

Wright, on the basis of obesity. The women filed complaints with the Maryland Commission on Human Relations, alleging unlawful employment discrimination. The Commission's staff investigated and found probable cause that the MTA discriminated. The MTA refused to concur with those findings, resulting in a hearing before an examiner. Before any hearing was held, however, the MTA filed in the Circuit Court a complaint for declaratory and injunctive relief against the Commission. The MTA requested a declaration determining whether obesity is covered within the meaning of the discrimination statute. We held that the MTA was required to exhaust administrative remedies and judicial review remedies and ordered the complaint dismissed for their failure to do so. *Id.* at 227, 449 A.2d at 386. Judge Eldridge, writing for the Court, outlined the important policy underpinnings of the exhaustion of administrative remedies requirement. He concluded that

> "[B]ecause of the strong public policy underlying this requirement that administrative remedies be exhausted, this Court, if it notices in a particular case an issue as to whether administrative remedies have been exhausted, will sua sponte address the issue despite the failure of the parties to raise the matter. . . . This Court has consistently held that statutorily prescribed administrative and judicial review remedies must be exhausted in cases involving the interpretation of statutory language. Moreover, to hold that the existence of a statutory interpretation issue furnishes an excuse to abort the administrative proceedings before a final agency decision, would also be inconsistent with the principle that the agency's construction of a statute which it administers is entitled to weight."

*Id.* at 232–33, 449 A.2d at 388–89 (citations omitted).

In light of these principles, we address the issue of exhaustion of administrative remedies. Pursuant to Article 22 of the Baltimore City Code, Members of the Retirement System have two avenues to appeal a decision regarding respective categories of benefits. First, the Panel of Hearing Examiners, appointed by the Baltimore City Board of Esti-

mates, conducts hearings on all matters regarding claims for ordinary disability, special disability, and special death benefits. § 33(*l*). These hearings are in the nature of adversarial proceedings, and the assigned hearing examiner must issue written findings of fact setting forth the reasons for the final determination. *Id.* Aggrieved parties may seek judicial review of the hearing examiner's determination in the Circuit Court for Baltimore City as follows:

> "The final determination of the hearing examiner shall be presumptively correct and shall not be disturbed on review except when arbitrary, illegal, capricious or discriminatory. If either party is aggrieved by a decision of the Baltimore City Court, the aggrieved party may further appeal such decision to the Court of Special Appeals, subject to review by the Court of Appeals."

*Id.* If neither party files an appeal, the hearing examiner's determination becomes final within thirty days, subject to the Panel's right of reexamination. *Id.*

■ Second, the Board of Trustees of the Retirement System has the authority to determine the validity of claims for benefits other than those claims subject to resolution by the Panel of Hearing Examiners.[7] Section 41 describes the process as follows:

> "The Board of Trustees, upon its own initiative, or upon the request of an applicant for the benefits provided for by this subtitle [including service retirement benefits, ordinary death benefits, and DROP benefits], shall conduct a hearing on said claim, which hearing shall be conducted as a judicial proceeding, all witnesses testifying under oath or by affirmation, and a record of the proceedings shall be made and kept. At such hearing, the investigation shall be conducted in such manner as to ascertain the substantial rights of the parties and the Board of Trustees shall not be bound by

---

7. In the Circuit Court proceeding, the Board represented in its response to request for admission of facts that the Board has the authority to determine the validity of claims for benefits other than those subject to the Panel of Hearing Examiners.

common law or statutory rules of evidence or by technical or formal rules of procedure."

This statutory provision does not outline expressly a judicial review procedure. Despite the absence of such a statutory provision, a party aggrieved by the Board's decision may seek judicial review. *See Bd. of License Commrs. v. Corridor Wine, Inc.,* 361 Md. 403, 410–12, 761 A.2d 916, 919–20 (2000) (noting that "when there is no statutory provision for judicial review of final adjudicatory decisions by administrative agencies, either a certiorari or a mandamus action in the appropriate circuit court is normally available for ordinary 'substantial evidence' judicial review of the adjudicatory administrative decisions"); *Heaps v. Cobb,* 185 Md. 372, 380, 45 A.2d 73, 76 (1945) (noting that "where the statute or ordinance makes no provision for judicial review, an implied limitation upon an administrative board's authority is that its decisions be supported by facts and that they be not arbitrary, capricious or unreasonable").

In the instant case, petitioners did not exhaust their specific administrative remedies. Each petitioner received a letter from the Administrator of the Retirement System. The letter noted that the Retirement System recently reviewed the Members' QDROs and determined that because the orders did not exclude DROP benefits, those benefits would be paid out as marital property along with the Members' other retirement benefits. Petitioners, however, did not seek a hearing before the Board, from whose determination they could have petitioned for judicial review. Instead, dissatisfied with the substance of the letter regarding their DROP benefits, petitioners filed an action for declaratory and injunctive relief against the Retirement System.[8] In the Circuit Court complaint, petitioners sought a declaration that DROP benefits "be excluded from marital property" to be paid out under the divorce decrees and QDROs and that the entire amount of the DROP benefits be disbursed to them. Petitioners also sought and

---

8. Respondent wives were joined later in the amended complaint. *See supra* footnote 3 and accompanying text.

obtained an injunction to enjoin the Retirement System from disbursing DROP monies until the court declared the parties' rights. The basis for the declaratory action, petitioners argue to this Court, was to determine whether the Retirement System was correct in its interpretation of the relationship between DROP and other Retirement System benefits and whether the Retirement System properly was distributing DROP benefits. Petitioners desired a determination of DROP's role in the Retirement System—whether DROP is separate from or integral to ordinary pension benefits. As such, petitioners first should have sought a hearing before the Board for a determination of this issue, one within the Board's purview. We hold that petitioners failed to exhaust their statutory administrative remedies.

Although the trial court properly dismissed the action, albeit on different grounds, that court erred in following its dismissal of the complaint with an order that the Retirement System "treat all DROP benefits as ordinary pension benefits for purposes of payments pursuant to the parties' Judgments of Divorce." Once the court dismissed the action, the Retirement System was no longer before the court. The court erred in ordering the Retirement System to take any action. Once a court dismisses an entire action, there is nothing then pending, and the court is without authority to issue an order with respect to the matter. *See State v. Sampson*, 297 So.2d 120, 122 (Fla.Dist.Ct.App.1974). All jurisdiction of the court as to the matter previously pending was at an end when the court dismissed the amended complaint, with prejudice. *See Hagan v. Robert & Co.*, 222 Ga. 469, 150 S.E.2d 663, 665 (1966). Moreover, when the Circuit Court dismissed the Amended Complaint, with prejudice, there was no longer an actual controversy before it and thus there was no issue before the court to be decided.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS VACATED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO VACATE THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AND TO RE-*

*MAND THE CASE TO THE CIRCUIT COURT WITH IN-STRUCTIONS TO DISMISS THE ACTION. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL AP-PEALS TO BE PAID BY PETITIONERS.*