829 A.2d 271

Scott **FOSLER**, et al.

v.

**PANORAMIC DESIGN, LTD.**

**No. 73, Sept. Term, 2001.**

Court of Appeals of Maryland.

July 28, 2003.

William C. Davis, III (Deborah L. Moran, Shulman, Rogers, Gandal, Pordy & Ecker, P.A., on brief), Rockville, for petitioners.

Jeffrey M. Schwaber (Alexander Nemiroff, Deanna L. Peters, Stein, Sperling, Bennett, DeJong, Driscoll & Greenfeig, P.C., on brief), Rockville, for respondent.

Argued before BELL, C.J. and ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

ELDRIDGE, J.

After becoming dissatisfied with a renovation project on their home, the petitioners, Scott and Gail Fosler, filed three actions against the respondent, Panoramic Design, Ltd., with which the Foslers had entered a "Construction Consultant Agreement." One suit, filed in the Circuit Court for Montgomery County, was this declaratory judgment action. The Foslers also filed a complaint with the Maryland Home Improvement Commission, a state government agency in the

Maryland Department of Labor, Licensing, and Regulation. In addition, the Foslers filed a complaint with the Montgomery County Department of Housing and Community Affairs. The three actions essentially alleged that Panoramic was performing home improvement work without a license, and, consequently, that the contract between the Foslers and Panoramic was unenforceable.

The Maryland Home Improvement Commission stayed its proceedings during the pendency of the other actions. The Circuit Court, however, allowed this declaratory judgment action to go to trial and to be resolved on the merits. The Circuit Court eventually ruled that Panoramic was performing home improvement work without a license and that the contract was unenforceable. On appeal, the Court of Special Appeals reversed the judgment of the Circuit Court in an unreported opinion. This Court issued a writ of certiorari, primarily to consider whether the Circuit Court for Montgomery County erred in failing to dismiss or stay the declaratory judgment action. We shall hold that it did; accordingly, we shall not reach any other issues in the case.

## I.

The following facts are not in dispute. The Foslers resided in a single-family house in Chevy Chase, Maryland, which they decided to renovate completely. Discussions between the Foslers and the respondent, Panoramic Design, Ltd., resulted in the parties entering into a "Design Agreement" and a "Construction Consultant Agreement." The latter, which is the contract at issue in the case at bar, was executed on May 20, 1997. Pursuant to the Construction Consultant Agreement, Panoramic agreed to the following terms:

"A. BIDDING PROJECT

 1. PD, Ltd. will bid or negotiate the complete project to individual subcontractors, vendors, and suppliers required to complete the project for Scott and Gail Fosler.

2. PD, Ltd. will prepare an itemized construction budget and construction schedule.

3. PD, Ltd. will coordinate contracts with Scott and Gail Fosler and subcontractors.

4. PD, Ltd. will acquire copies of all subcontractors' insurance policies, licenses, and references.

"B. MANAGING PROJECT

1. PD, Ltd. will coordinate subcontractor work on job site and local government inspections.

2. PD, Ltd. will supervise Gail and Scott Fosler's construction site, but is not responsible for subcontractors' work.

3. PD, Ltd. will provide Scott and Gail Fosler with a financial Construction Management Report on the 1st and 15th of each month during the construction of your project. This report will outline Scott and Gail Fosler's financial expenditures for construction to date.

4. PD, Ltd. will secure all subcontractors lien-release forms if required."

In exchange, the Foslers agreed to pay to Panoramic a fee of twenty percent of the cost of materials and labor. Panoramic earned additional income based on a twenty percent mark-up of all procured materials.

Early in 1999, the Foslers became dissatisfied with Panoramic's work. As a result, on March 16, 1999, the Foslers filed the present declaratory judgment action in the Circuit Court for Montgomery County. Their complaint sought a declaration that the services provided to them by Panoramic under the contract constituted a "home improvement" within the meaning of the Maryland Home Improvement Law, Maryland Code (1992, 1998 Repl.Vol., 2002 Supp.), § 8–101 et seq. of the Business Regulation Article.[1] They also sought a declaration that the contract was unenforceable under this Court's

---

1. Unless otherwise stated, all statutory references are to this Article.

holding in *Harry Berenter, Inc. v. Berman,* 258 Md. 290, 265 A.2d 759 (1970), on the grounds that Panoramic was required to have a license from the Maryland Home Improvement Commission, but did not have such a license, when it performed home improvement services for the Foslers.

As previously mentioned, the Foslers also filed a complaint with the Maryland Home Improvement Commission on May 25, 1999. Similarly, this complaint claimed that Panoramic was performing home improvement work without a license, in violation of the Maryland Home Improvement Law. The Commission submitted the complaint to its Legal Services Division to determine whether administrative charges should be issued against Panoramic. Finally, the Foslers filed a complaint with the Montgomery County Department of Housing and Community Affairs. In that action, the Foslers alleged that Panoramic committed a deceptive practice in violation of the County's consumer protection laws by performing home improvement work without a license.

On August 24, 1999, an investigator from the Montgomery County Department of Housing and Community Affairs sent a letter to the state investigator assigned to the Maryland Home Improvement Commission complaint, stating in relevant part as follows:

> "Enclosed is a copy of the court notice setting trial in this matter for October 26, 1999. The charge is whether Panoramic committed a deceptive practice in violation of the county's consumer protection laws by doing home improvement work without a license.

> "It would be helpful to have the MHIC [Maryland Home Improvement Commission] opinion on the issue of whether Panoramic needed a license by then, as the court would give it great weight."

One month later, however, the Maryland Home Improvement Commission advised the Foslers "that this agency will take no action on the complaint until final resolution" of the court

actions against Panoramic.[2]

Subsequently, Panoramic filed a motion to dismiss the Foslers' declaratory judgment action, asserting that "[t]he Maryland Legislature has determined that the sole and exclusive avenue for determining whether a contractor is a 'home improvement contractor,' lies with the Maryland Home Improvement Commission. As such, the Declaratory Judgment Action is an inappropriate and unavailable remedy." Panoramic also relied on the fact that the Home Improvement Statute "contains no provision authorizing a private cause of action by a homeowner against a person or firm that is alleged to be a home improvement contractor." Alternatively, Panoramic argued that, "when a statutory scheme includes both administrative proceedings and provisions for judicial review of the administrative decision, this is such a scheme that requires the parties to exhaust the administrative remedies prior to recourse to the courts." Thus, Panoramic maintained that the declaratory action was improper, since the Foslers had "failed ... to exhaust their administrative remedies."

The Foslers responded by arguing, *inter alia*, that

---

2. The record discloses very little about the complaint which the Foslers filed with the Montgomery County Department of Housing and Community Affairs, and the parties' briefs in this Court make no mention of it. The briefs refer only to the present declaratory judgment action and the administrative proceeding before the Maryland Home Improvement Commission, which administrative proceeding has been stayed.

 The Montgomery County Department of Housing and Community Affairs proceeding was apparently instituted pursuant to Chapter 11, §§ 11–1 through 11–9, of the Montgomery County Code, which provide for consumer complaints about alleged "deceptive trade practices" and "unfair trade practices" to be made to the County Department, investigation by the Department, attempts at conciliation, and, if conciliation fails, actions in circuit court by the County Attorney on behalf of the consumer (§§ 11–7, 11–7A, and 11–8). These provisions seem to create a new circuit court cause of action, and appear to be somewhat similar to the local ordinance involved in *McCrory Corporation v. Fowler*, 319 Md. 12, 570 A.2d 834 (1990).

 The record in the case at bar indicates that an action was filed in the Circuit Court for Montgomery County, pursuant to Chapter 11 of the Montgomery County Code, and based on the Foslers' complaint to the local Department. The record does not indicate what has happened to that action.

"[e]ven assuming, *arguendo*, Panoramic's position relative to administrative exhaustion has some merit, the Foslers filed a complaint with the MHIC [Maryland Home Improvement Commission] and have been advised by the MHIC that *MHIC on its own initiative has stayed* any action on the Foslers' complaint pending 'completion of litigation.'

\* \* \*

"Accordingly, any argument that the Foslers have failed to exhaust their remedies before the MHIC is without merit. The Foslers have done everything they could do to obtain a determination from MHIC on their complaint against Panoramic. *It is the MHIC,* and not the Foslers, that has decided to await the outcome of the various court actions and take no administrative action on the Foslers' complaint."

Following a hearing, the Circuit Court denied Panoramic's motion to dismiss.

The Foslers then filed a motion for summary judgment, which was also denied by the Circuit Court. A three-day trial before a jury ensued. At the conclusion of the trial, the court discharged the jury, holding, *inter alia,* that there were no disputed facts for the jury to consider which could resolve the issue of whether Panoramic was acting as a contractor or as a consultant. The Circuit Court then filed a judgment declaring that Panoramic "performed home improvement contractor services for" the Foslers "within the meaning of the Maryland Home Improvement statute," that "Panoramic ... was required to have a license issued by the Maryland Home Improvement Commission," that "Panoramic ... performed [the] home improvement contractor services for plaintiffs ... without a license issued by the Maryland Home Improvement Commission," and that, consequently, the contract was unenforceable under Maryland law.

Panoramic appealed to the Court of Special Appeals. The intermediate appellate court reversed the order of the Circuit Court and remanded the case for a new trial, holding that the issue of whether Panoramic was a general contractor or a

consultant was for the jury. The Foslers then filed a petition for a writ of certiorari which we granted, *Fosler v. Panoramic*, 365 Md. 472, 781 A.2d 778 (2001).

II.

A.

The Maryland Home Improvement Law was originally enacted by Ch. 133 of the Acts of 1962. The title of the original statute explained that the General Assembly enacted it with the intention of, *inter alia*, "providing generally for the regulation of the home improvement business of all persons in this State" and "establishing a system of licensing certain contractors and salesmen under a new administrative agency to be known as the Maryland Home Improvement Commission." For a review of the Maryland Home Improvement Law and the authority of the Commission, *see* Judge Harrell's opinion for the Court of Special Appeals in *Brzowski v. Md. Home Improvement*, 114 Md.App. 615, 691 A.2d 699 (1997).

Although § 8–208 of the Home Improvement Law charges the Commission with the administration and enforcement of the statute, and subtitle 3, §§ 8–301 through 8–317, authorize the Commission to take certain remedial actions if there are violations of the licensing provisions, there is no indication in the language of the Act that the Legislature intended that the administrative remedies provided therein were to be the exclusive method of enforcement.

As this Court explained in detail in *Zappone v. Liberty Life Ins. Co.*, 349 Md. 45, 60–61, 706 A.2d 1060, 1067–1068 (1998),

"[w]henever the Legislature provides an administrative and judicial review remedy for a particular matter or matters, the relationship between that administrative remedy and a possible alternative judicial remedy will ordinarily fall into one of three categories.

"*First*, the administrative remedy may be exclusive, thus precluding any resort to an alternative remedy. Under this

scenario, there simply is no alternative cause of action for matters covered by the statutory administrative remedy.

"*Second,* the administrative remedy may be primary but not exclusive. In this situation, a claimant must invoke and exhaust the administrative remedy, and seek judicial review of an adverse administrative decision, before a court can properly adjudicate the merits of the alternative judicial remedy. *See, e.g., McCullough v. Wittner,* 314 Md. 602, 613, 552 A.2d 881, 886 (1989) ('Under circumstances like these, where a plaintiff has both an administrative remedy and an independent judicial action, and the administrative agency's jurisdiction is deemed primary, it is appropriate for the trial court to retain, for a reasonable period of time, jurisdiction over the independent judicial action pending invocation and exhaustion of the administrative procedures'); *Md.-Nat'l Cap. P. & P. Comm'n v. Crawford,* 307 Md. 1, 18, 511 A.2d 1079, 1088 (1986) ('Once the administrative procedures are exhausted, the trial court may proceed [with both the independent judicial action and the administrative review action]; the plaintiff whose case is meritorious may be entitled to whatever relief is available under either the independent judicial action or the administrative/judicial review remedy'); *Bd. of Ed. for Dorchester Co. v. Hubbard,* 305 Md. 774, 792, 506 A.2d 625, 634 (1986).

"*Third,* the administrative remedy and the alternative judicial remedy may be fully concurrent, with neither remedy being primary, and the plaintiff at his or her option may pursue the judicial remedy without the necessity of invoking and exhausting the administrative remedy. *Md.-Nat'l Cap. P. & P. Comm'n v. Crawford, supra,* 307 Md. at 22–31, 511 A.2d at 1090–1094; *Bd. of Ed. for Dorchester Co. v. Hubbard, supra,* 305 Md. at 791, 506 A.2d at 633 . . . .

"Which one of these three scenarios is applicable to a particular administrative remedy is ordinarily a question of legislative intent." [3]

---

3. As pointed out in the beginning of the above-quoted passage from *Zappone,* the relationship between a statutory administrative remedy

The Court continued, *Zappone*, 349 Md. at 63, 706 A.2d at 1069 (footnote omitted, emphasis added):

> "Despite occasional dicta in a few opinions suggesting the contrary, where neither the statutory language nor the legislative history disclose an intent that the administrative remedy is to be exclusive, and where there is an alternative judicial remedy under another statute or under common law or equitable principles, there is no presumption that the administrative remedy was intended to be exclusive. *There is in this situation, however, a presumption that the administrative remedy is intended to be primary, and that a claimant cannot maintain the alternative judicial action without first invoking and exhausting the administrative remedy.*"

*See also, e.g., Brown v. Fire and Police Employees' Retirement System*, 375 Md. 661, 826 A.2d 525 (2003); *Moose v. F.O.P.*, 369 Md. 476, 485–494, 800 A.2d 790, 796–802 (2002); *Bell Atlantic v. Intercom*, 366 Md. 1, 12, 782 A.2d 791, 797 (2001); *Josephson v. City of Annapolis*, 353 Md. 667, 674–678, 728 A.2d 690, 693–695 (1998); *Md. Reclamation v. Harford County*, 342 Md. 476, 493, 677 A.2d 567, 576 (1996); *Luskin's v. Consumer Protection*, 338 Md. 188, 194–199, 657 A.2d 788, 791–793 (1995); *Clinton v. Board of Education*, 315 Md. 666, 678, 556 A.2d 273, 279 (1989); *Quesenberry v. WSSC*, 311 Md. 417, 424, 535 A.2d 481, 484 (1988); *Md.-Nat'l Cap. P. & P. Comm'n v. Crawford*, 307 Md. 1, 13, 511 A.2d 1079, 1085 (1986); *Bd. of Ed. for Dorchester Co. v. Hubbard*, 305 Md. 774, 786, 506 A.2d 625, 631 (1986).

 Specifically with regard to declaratory judgement actions, the presumption that a statutory administrative remedy is primary is reflected in the Declaratory Judgment Act.

---

and a possible alternative judicial remedy will *"ordinarily "* fall into one of three categories (emphasis added). Other scenarios, however, could occur. For example, subtitle 4 of the Maryland Home Improvement Law, discussed later in Part II.B. of this opinion, illustrates a fourth category, namely where there is a statutory administrative remedy and an alternative judicial remedy, and the Legislature specified that, if both are invoked, the alternative judicial remedy shall be primary.

Code (1974, 2000 Repl.Vol.), § 3–409(b) of the Courts and Judicial Proceedings Article, which is part of the Declaratory Judgment subtitle, states that, "[i]f a statute provides a special form of remedy for a specific type of case, that statutory remedy shall be followed in lieu of a proceeding under this subtitle." *See Brown v. Fire and Police Employees' Retirement System, supra,* 375 Md. at 669, 826 A.2d at 530; *Moose v. F.O.P., supra,* 369 Md. at 486, 800 A.2d at 796–797; *Utilities v. WSSC,* 362 Md. 37, 44–45, 763 A.2d 129, 133 (2000); *Montgomery County v. Broadcast Equities,* 360 Md. 438, 457, 758 A.2d 995, 1005 (2000).

■ We explained in the *Zappone* opinion, 349 Md. at 61–65, 706 A.2d at 1069–1070, and have reaffirmed in more recent opinions (*e.g., Bell Atlantic v. Intercom, supra,* 366 Md. at 12, 782 A.2d at 797), that several factors may be pertinent in determining whether the Legislature intended that the administrative remedy be primary or, stated another way, in determining whether the presumption of administrative primary jurisdiction is rebutted. The factors include any indication of legislative intent in the statutory language, the comprehensiveness of the administrative remedy, the agency's view as to whether its jurisdiction is primary, etc. Among the most important factors are the nature of the alternative judicial remedy in relation to the statutory scheme containing the administrative remedy, the type of disputed issues, and the relevance of administrative expertise. The *Zappone* opinion thus stated (349 Md. at 65–66, 706 A.2d at 1070):

> "An extremely significant consideration under our cases is the nature of the alternative judicial cause of action pursued by the plaintiff. Where that judicial cause of action is wholly or partially dependent upon the statutory scheme which also contains the administrative remedy, or upon the expertise of the administrative agency, the Court has usually held that the administrative remedy was intended to be primary and must first be invoked and exhausted before resort to the courts.

"On the other hand, where the alternative judicial remedy is entirely independent of the statutory scheme containing the administrative remedy, and the expertise of the administrative agency is not particularly relevant to the judicial cause of action, the Court has held that the administrative remedy was not intended to be primary and that the plaintiff could maintain the independent judicial cause of action without first invoking and exhausting the administrative procedures."

██ Applying these principles to the present controversy leads to the conclusion that the administrative remedies provided by the Maryland Home Improvement Law are primary under the circumstances of the present case. Thus, the Circuit Court and the Court of Special Appeals erred in not requiring the petitioners to exhaust their administrative remedies prior to proceeding with the merits of the declaratory judgment action.

### B.

The Foslers' complaints against Panoramic fall within subtitle 3 of the Maryland Home Improvement Law, §§ 8–301 through 8–317 of the Business Regulation Article, which relate to the requirement that a home improvement contractor, subcontractor, or salesperson "must" have a license from the Commission, the examination and other requirements for obtaining a license, the approval or denial of applications for a license, the scope and term of a license, an applicant's right to a contested case hearing before the Commission in accordance with the Maryland Administrative Procedure Act, Code (1984, 1999 Repl.Vol.), §§ 10–201 through 10–226 of the State Government Article, the different sanctions which the Commission may impose on licensees for various types of misconduct, and, in § 8–208, the authority of the Commission to enforce the Home Improvement Law against "a person alleged to be in violation of this title," including "a person who is not licensed

under this title . . . . "[4]

█ Subtitle 3 of the Home Improvement Law contains no language expressly providing that the Commission has primary jurisdiction when there is a substantial issue over whether a person or entity is required to obtain from the Commission a license. Nevertheless, when the language of subtitles 4 and 1 is compared to the absence of similar language in subtitle 3, the presumption of primary jurisdiction in the Commission, over a substantial dispute concerning the need to obtain a license, is reinforced.

Subtitle 4 of the Home Improvement Law establishes the Home Improvement Guaranty Fund. The Fund was created to provide an additional remedy for homeowners who suffer "actual loss" because of unsatisfactory work performed by a home improvement contractor. *See* § 8–405(a) ("an owner may recover compensation from the Fund for an actual loss that results from an act or omission by a licensed contractor"). Subtitle 4 provides for an administrative remedy before the Commission for claims against the Fund, a contested case hearing before the Commission, and payments by the Commission. Section 8–402 of subtitle 4, however, expressly provides, in pertinent part, as follows:

" § 8–402. **Scope of subtitle.**

This subtitle does not:

\* \* \*

(2) limit the availability of other remedies to a claimant; or

(3) require a claimant to exhaust administrative remedies before the Commission before bringing an action in court."

Section 8–408(b) of subtitle 4 also states as follows:

"(b) *Administrative and legal proceedings.*—(1) Notwithstanding § 8–402(2) of this subtitle, a claimant may not

---

**4.** Section 1–101(g) of the Business Regulation Article defines "person" as including a "partnership, firm, association, corporation, or other entity."

concurrently submit a claim to recover from the Fund and bring an action in a court of competent jurisdiction against a contractor based on the same facts alleged in the claim.

"(2) If the claimant brings an action in a court of competent jurisdiction based on the same facts alleged in a pending claim, the Commission shall stay its proceedings on the claim until there is a final judgment and all rights to appeal are exhausted.

"(3)(i) To the extent that a final judgment or final award in arbitration is decided in favor of the claimant, the Commission shall approve the claim against the Fund.

"(ii) If a final judgment or final award in arbitration is decided in favor of the defendant, the Commission shall dismiss the claim against the Fund."

Consequently, subtitle 4 of the Home Improvement law explicitly provides that the Commission's jurisdiction under that subtitle is not primary but, rather, that judicial or arbitration proceedings shall be primary. *See also Brzowski v. Md. Home Improvement, supra,* 114 Md.App. at 630–631, 691 A.2d at 707 ("A claimant has essentially three avenues from which he can obtain relief from the Fund. He can file a claim directly with the Commission or proceed initially in court or in an arbitration proceeding").

In light of the language of subtitle 4, it is reasonable to assume that, if the General Assembly also intended that the Commission's jurisdiction under subtitle 3 not be primary, it would have said so. The contrast between the primary jurisdiction language of subtitle 4 (which makes judicial or arbitration proceedings primary), and the absence of such language in subtitle 3, clearly indicates a legislative intent that the Commission have primary jurisdiction over disputed issues covered by subtitle 3.

Title 1, § 8–102(c), of the Home Improvement law also expressly addresses the relationship between the Commission's jurisdiction and specified possible alternative actions. It is relevant to both preemption and primary jurisdiction issues. Section 8–102(c) states as follows:

"(c) *Authorized regulation.*—This title does not limit the power of a county or municipal corporation:

(1) to regulate the character, performance, or quality of a home improvement by having a system of inspections and permits designed to:

(i) ensure compliance with and help to enforce applicable State and local building laws; or

(ii) enforce other laws necessary to protect the public health and safety; or

(2) to adopt a system of inspections and permits that requires:

(i) submission to and approval by the county or municipal corporation of plans and specifications for an installation, before construction of the installation begins; and

(ii) inspection of work done."

Section 8–102(c), however, does not encompass a substantial dispute over whether a person or entity is required to be licensed by the Commission as a home improvement contractor or subcontractor.

It is obvious that the General Assembly, in enacting the Home Improvement Law, carefully specified situations where the Commission's jurisdiction would not be primary in relationship to alternative remedies or regulations. The failure to make similar specifications with respect to the Commission's subtitle 3 licensing jurisdiction certainly indicates that the Commission's subtitle 3 jurisdiction ordinarily should be treated as primary.

## C.

The nature of the Foslers' declaratory judgment action in relation to the Home Improvement Law, and the type of dispute between the Foslers and Panoramic, further confirm that the Commission's jurisdiction was primary under the circumstances of this case.

The Foslers' declaratory judgment action sought a declaration that, *inter alia,* the "Construction Consultant Agreement"

with Panoramic and Panoramic's services under that agreement constituted a "home improvement contract" and a "home improvement" within the meaning of the Home Improvement Law, that Panoramic was a "contractor" under the Home Improvement Law, and that, therefore, Panoramic was required to be licensed by the Commission under subtitle 3 of the Home Improvement Law.[5] Thus, the declaratory judg-

---

5. Sections 8–101(c), 8–101(g), 8–101(h), 8–101(i) and 8–301(a) of the Home Improvement Law state as follows:

"(c) *Contractor.*—'Contractor' means a person, other than an employee of an owner, who performs or offers or agrees to perform a home improvement for an owner."

\* \* \*

"(g) *Home improvement.*—(1) 'Home improvement' means:

(i) the addition to or alteration, conversion, improvement, modernization, remodeling, repair, or replacement of a building or part of a building that is used or designed to be used as a residence or a structure adjacent to that building; or

(ii) an improvement to land adjacent to the building,

(2) 'Home improvement' includes:

(i) construction, improvement, or replacement, on land adjacent to the building, of a driveway, fall-out shelter, fence, garage, landscaping, porch, or swimming pool;

(ii) connection, installation, or replacement, in the building or structure, of a dishwasher, disposal, or refrigerator with an icemaker to existing exposed household plumbing lines;

(iii) installation, in the building or structure, of an awning, fire alarm, or storm window; and

(iv) work done on individual condominium units.

(3) 'Home improvement' does not include:

(i) construction of a new home;

(ii) work done to comply with a guarantee of completion for a new building project;

(iii) connection, installation, or replacement of an appliance to existing exposed plumbing lines that requires alteration of the plumbing lines;

(iv) sale of materials, if the seller does not arrange to perform or does not perform directly or indirectly any work in connection with the installation of application of the materials;

(v) work done on apartment buildings that contain four or more single-family units; or

(vi) work done on the commonly owned areas of condominiums.

(h) *Home improvement contract.*—'Home improvement contract' means an oral or written agreement between a contractor and owner for the contractor to perform a home improvement.

ment action was based on the statute which the Commission is responsible for administering. The substance of the action had no independent legal basis. The General Assembly charged the Commission with the duty, and with having the required expertise, to determine whether an entity was engaged in home improvement and, therefore, needed a home improvement contractor's license from the Commission. This is an important factor indicating that, with regard to the present dispute, the Commission had primary jurisdiction. *See Zappone v. Liberty Life Ins. Co., supra,* 349 Md. at 65, 706 A.2d at 1070 ("Where the judicial cause of action is wholly or partially dependent upon the statutory scheme which also contains the administrative remedy, or upon the expertise of the administrative remedy, the Court has usually held that the administrative remedy was intended to be primary").

Moreover, this is not a case where it is clear that a person or entity was engaging in the home improvement business, needed a license from the Commission, was not licensed, and the issue before the court in a breach of contract action or mechanic's lien action was the effect, as a matter of public policy, of the illegality upon the breach of contract or mechanic's lien action. *Cf. Harry Berenter, Inc. v. Berman, supra,* 258 Md. at 292, 265 A.2d at 760 ("The facts are not in dispute. The appellant, Berenter, Inc., ... was engaged in the construction business including the remodeling of homes. There is no contention by the appellant that the Home Improvement Law does not apply to it[,] and it is conceded that it was not licensed under that Law when the contract or contracts in-

---

(i) *License.*—(1) 'License' means, except where it refers to a license other than one issued under this title, a license issued by the Commission.

(2) 'License' includes:

(i) a contractor license;

(ii) a subcontractor license; and

(iii) a salesperson license."

\* \* \*

" § 8–301. **License required; exceptions.**

(a) *Contractor license.*—Except as otherwise provided in this title, a person must have a contractor license whenever the person acts as a contractor in the State."

volved in the present case were made"). In the case at bar, however, there are genuine disputes over whether the contract at issue was a home improvement contract, whether Panoramic was engaged as a contractor in the home improvement business, and, therefore, whether Panoramic was required to be licensed by the Commission. As the investigator for the Montgomery County Department of Housing and Community Affairs recognized in his letter to the Commission, the General Assembly charged the Commission with the duty of resolving these disputes. *See Luskin's v. Consumer Protection, supra,* 338 Md. at 196, 657 A.2d at 791–792 ("We find that the mere nature of this dispute indicates the need for the interpretation of the facts and the application of the law to the facts to be done, in the first instance, by the agency with special expertise in the area").

■ In addition, when an administrative agency like the Home Improvement Commission is charged with administering a statute, the " 'administrative agency's interpretation and application of the statute which the agency administers should ordinarily be given considerable weight by reviewing courts.' " *Division of Labor v. Triangle General Contractors,* 366 Md. 407, 416, 784 A.2d 534, 539 (2001), quoting *Board of Physician Quality Assurance v. Banks,* 354 Md. 59, 69, 729 A.2d 376, 381 (1999). *See also, e.g., Dimensions Health Corp. v. Maryland Insurance Administration,* 374 Md. 1, 17, 821 A.2d 40, 50 (2003) ("When construing a statute intended to be administered by an administrative agency, courts normally give significant weight to an agency's interpretation of the statute"); *Jordan v. Hebbville,* 369 Md. 439, 459–460, 800 A.2d 768, 780–781 (2002); *MTA v. King,* 369 Md. 274, 289, 799 A.2d 1246, 1254 (2002); *Marzullo v. Kahl,* 366 Md. 158, 172–173, 783 A.2d 169, 177 (2001); *Gigeous v. ECI,* 363 Md. 481, 496, 769 A.2d 912, 921–922 (2001); *Lussier v. Md. Racing Commission,* 343 Md. 681, 696–697, 684 A.2d 804, 811–812 (1996), and cases there cited. Furthermore, when an administrative agency renders a final decision in an adjudicatory case, "the agency's decision is prima facie correct and presumed valid," *Board of Physician Quality Assurance v. Banks, supra,* 354 Md. at 68,

729 A.2d at 381 (quoting prior cases, with internal quotation marks omitted). *See, e.g., Mehrling v. Nationwide Insurance Co.,* 371 Md. 40, 57, 806 A.2d 662, 672 (2002); *Division of Labor v. Triangle General Contractors, supra,* 366 Md. at 416, 784 A.2d at 539; *Marzullo v. Kahl, supra,* 366 Md. at 172, 783 A.2d at 177; *MVA v. McDorman,* 364 Md. 253, 261, 772 A.2d 309, 314 (2001); *Catonsville Nursing Home v. Loveman,* 349 Md. 560, 569, 709 A.2d 749, 753 (1998).

Under the circumstances here, if a declaratory judgment action were permitted to proceed to judgment, when there is no decision by the Commission in this or in a similar case, the principle that weight should be given to the agency's interpretation and application of the statute will not be given effect. The same is true concerning the principle that the agency's decision is prima facie correct. This Court's observation in *State v. State Board of Contract Appeals,* 364 Md. 446, 458, 773 A.2d 504, 511 (2001), regarding a different statute and a different administrative agency, is equally applicable to the Home Improvement Law and the Commission:

"[T]he issue [of statutory interpretation and application] is obviously a reasonably debatable one. As the agency charged with making final administrative adjudications under the procurement law, the Board of Contract Appeals' determination of the issue, embodied in a final decision by the Board, would be helpful prior to a judicial resolution of the issue."

Furthermore, permitting this declaratory judgment action to proceed to judgment could result in troublesome conflicts. The Commission is not a party in this declaratory judgment action and presumably would not be bound by the judgment. As earlier discussed, subtitle 3 of the Home Improvement Law does not contain a provision similar to that in subtitle 4 which directs the Commission to comply with a final judgment in a court action or a final decision in an arbitration proceeding (*see* § 8 405(b)). On the other hand, the Commission is bound by a final judgment in a court action judicially reviewing the Commission's decision.

## D.

■ Finally, the fact that the Commission stayed the administrative proceedings, because the Foslers had caused judicial proceedings to be instituted, does not excuse the failure to exhaust administrative remedies before the Commission. Presumably, upon the filing of this opinion holding that the Commission has primary jurisdiction, the Commission will proceed with the case before it. Moreover, if necessary, "mandamus ... may lie to enforce administrative compliance with ... [the agency's] duties." *MTA v. King, supra,* 369 Md. at 287, 799 A.2d at 1253, and cases there cited. *See also Patel v. Reno,* 134 F.3d 929 (9th Cir.1997).

Upon remand to the Circuit Court, that court should stay this declaratory judgment action pending a final decision by the Home Improvement Commission. *State v. State Board of Contract Appeals, supra,* 364 Md. at 458–459, 773 A.2d at 511, and cases there cited.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS VACATED AND CASE REMANDED TO THAT COURT WITH DIRECTIONS TO VACATE THE JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AND REMAND THE CASE TO THE CIRCUIT COURT FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE EVENLY DIVIDED BETWEEN THE PETITIONERS AND THE RESPONDENT.*