860 A.2d 871

**CONVERGE SERVICES GROUP, LLC d/b/a SureDeposit**

v.

**J. Joseph CURRAN, Jr., et al.**

**No. 13, Sept. Term, 2004.**

Court of Appeals of Maryland.

Nov. 8, 2004.

Andrew M. Dansicker (Joshua R. Treem of Schulman, Treem, Kaminkow, Gilden & Ravenell, P.A., on brief), Baltimore, for appellant.

Philip D. Ziperman, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. of Maryland, and William D. Gruhn, Asst. Atty. Gen., on brief), Baltimore, for appellees.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

HARRELL, J.

An incipient dispute arose between Converge Services. Group, LLC, d/b/a SureDeposit, Inc. ("SureDeposit") and the Consumer Protection Division of the Office of the Maryland Attorney General ("Division") in 2002 when the Division commenced an investigation of SureDeposit for the latter's marketing and sale of a "surety bond product" to Maryland residential real estate tenants to be used by the tenants in lieu of traditional security deposits required by their tenancies. After some administrative discovery occurred, the Division notified SureDeposit in January 2003 that it believed SureDeposit's trade practices violated the Maryland Consumer Protection Act, Md.Code (1975, 2000 Repl.Vol.), § 13–101, *et seq.*, of the Commercial Law Article ("CPA") and the Maryland Security Deposit Law and Application Fee Law, Md.Code (1974, 2003 Repl.Vol.), §§ 8–203 and 8–213 of the Real Property Article (collectively, "SDL"). Not surprisingly, SureDeposit disagreed.

SureDeposit and the Division engaged in some negotiations; but, apparently unsatisfied with their course and facing a potential contested administrative process regarding the Division's probable filing of formal charges, SureDeposit filed on 9 October 2003 a complaint in the Circuit Court for Baltimore County seeking declaratory relief that the SDL did not apply to SureDeposit's "surety bond product" and, assuming that relief were granted, that SureDeposit had not violated the CPA.

The Division, on 26 November 2003, filed an administrative statement of charges against SureDeposit, alleging multiple violations of the CPA, some of which overlapped with allegations of violations of the SDL. After the parties exchanged some mutual paper discovery in SureDeposit's Circuit Court action, the Division moved there for dismissal of the complaint under Md. Rule 2–323(b)(2) on the basis that the declaratory judgments sought would not resolve fully the entire controver-

sy between the parties in accordance with § 3–409(a) of the Declaratory Judgment Act and that the Division, as an administrative agency with recognized expertise with regard to administering and interpreting the CPA, exercised primary jurisdiction over the entire dispute.

The Circuit Court dismissed SureDeposit's complaint on 4 February 2004. SureDeposit noted an appeal to the Court of Special Appeals. We issued a writ of certiorari, on our initiative and before the intermediate court could decide the appeal, in order to consider SureDeposit's following questions, which we reword slightly for consistency.[1]

I. Does the Division have "primary jurisdiction" over the subject matter of the complaint where the issues raised in the complaint require interpretation of the Security Deposit Law, not the Consumer Protection Act?

II. If the Division does have primary jurisdiction, did the Division waive that argument by affirmatively engaging in discovery in the Circuit Court case?

III. Does the Security Deposit Law apply to the marketing and sale of SureDeposit's surety bond product?

Based on our analysis of SureDeposit's first issue, and the interplay between the principles of primary jurisdiction and the statutory requirements of the Declaratory Judgment Act, Md.Code (1973, 2002 Repl.Vol.), §§ 3–401—3–415 of the Courts and Judicial Proceedings Article, we shall affirm the Circuit Court's judgment.[2]

I.

A.

SureDeposit is a New Jersey corporation that offers nationwide a "surety bond product" to residential rental tenants as

---

**1.** In considering an appeal on bypass of the Court of Special Appeals, we "will consider those issues that would have been cognizable by the Court of Special Appeals." Md. Rule 8–131(b)(2).

**2.** We do not reach SureDeposit's waiver argument, having resolved its appeal on an alternative basis in addition to primary jurisdiction; nor do we interpret the Security Deposit Law.

an alternative to paying a security deposit to their landlords. Consumers purchase these surety bonds, usually at the commencement of the tenancy, by signing a document entitled "SureDeposit Bond Acknowledgment Form" (Acknowledgment Form) and paying a premium to their landlords. The landlords collect the premium and forward it to SureDeposit. SureDeposit retains a portion of this premium as profit while allotting a portion of it to a "primary claims pool" [3] to satisfy damage claims filed by landlords. Another portion is returned to the landlords to compensate them for their administrative expenses, although a landlord may elect to receive a portion of any excess funds available in the claims pool in lieu of this payment.

SureDeposit characterizes its "surety bond product" as a surety contract where SureDeposit is the surety, the tenant is the principal, and the landlord is the obligee. The surety bond product seems neither to protect nor insure the tenant from the typical landlord claim most often satisfied from a tenant's security deposit. Rather, the surety bond product allows a landlord to collect compensation for damages to the leased property from an allegedly readily available "claims pool" in lieu of the traditional security deposit. In addition, according to the Acknowledgment Form signed by the tenant, the "surety bond product" may be utilized by the landlord to

---

**3.** The Acknowledgment Form states that tenants "agree to purchase a security deposit bond from Bankers Insurance Company...." There is little evidence in the record as it reaches us in the posture of this case distinguishing Bankers Insurance Company ("BIC") and the "primary claims pool" from SureDeposit. In addition, First Community Insurance Company ("FCIC") is described as the surety on a separate contract between SureDeposit and the landlord. The Acknowledgment Form requires that payment for purchasing the security deposit bond from BIC be made to SureDeposit. Furthermore, in SureDeposit's opposition to the Division's motion to dismiss, SureDeposit states that "SureDeposit, acting as an independent third party, compensates the landlord for the damage claimed ... then [SureDeposit] has the option of seeking reimbursement of subrogated amounts from the tenant for amounts up to the bond coverage limit." Recognizing that SureDeposit may very well stand as an agent on behalf of BIC or FCIC, we resolve the ambiguity in accordance with SureDeposit's filing and refer to SureDeposit as the surety throughout this opinion.

pay for past due rent, fees, and any other charges beyond "normal wear and tear" to the leased premises. These charges include court costs, expenses, and attorney's fees.

The Acknowledgment Form states that SureDeposit retains the right to seek reimbursement from the tenant for sums paid to the landlord for damages. In addition to SureDeposit's right to reimbursement, the Acknowledgment Form purports to protect the landlord by waiving any landlord responsibility for SureDeposit's collection activities. Tenants also preauthorize SureDeposit to collect "all requested information to assist in the collection or monies paid by BIC as previously described," from "anyone."

### B.

In 2001, SureDeposit began selling its surety bond product in Maryland. Between June 2002 and September 2002, the Division issued administrative subpoenas for production of documents and depositions of SureDeposit's corporate officers. SureDeposit complied with the subpoenas for production of documents and offered up Dan Rudd, SureDeposit's Chief Financial Officer and Chief Operating Officer, for deposition on 10 September 2002.

Upon the conclusion of this discovery, SureDeposit began negotiation with the Division about the investigation. Two letters were sent to the Division, on 9 October 2002 and 19 December 2002, requesting an appointment to discuss any concerns surrounding its surety bond product. At some point during the investigation, SureDeposit voluntarily suspended sale of its surety bond product in Maryland.

The Division responded on 10 January 2003 that it had "reason to believe" that SureDeposit engaged "in trade practices that violate the Maryland Consumer Protection Act, Md.Code Ann., Com. Law II, § 13–101 *et seq.*,[4] and the

---

4. The relevant portions of the CPA mentioned were §§ 13–301(1) and 13–301(3). They state that,

Maryland Security Deposit Law and Application Fee Law, Md.Code Ann., Real Property, §§ 8–203[5] and 8–213[6] (2001 Supp.)."

On 21 January 2003, SureDeposit and the Division met to discuss a proposed Assurance of Discontinuance that would require SureDeposit to halt permanently the sale of its surety bond product, make restitution to its current clients, and pay the Division's administrative costs and a civil penalty. That meeting was followed by another exchange of letters. Sure-Deposit sought further clarification of the allegations regarding violations of the CPA and SDL. The Division explained why it believed SureDeposit was in violation of those laws and urged settlement through execution of the Assurance of Discontinuance. In the Division's last letter on 25 July 2003, it stated that, "[t]ypically when we cannot reach an acceptable

---

"Unfair or deceptive trade practices include any: (1) False, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers; ... (3) Failure to state a material fact if the failure deceives or tends to deceive; ..."
Md.Code (1975, 2000 Repl.Vol.) of the Commercial Law Article. In addition, § 13–303 of the CPA prohibits violations of § 13–301.

5. Section 8–203 of the Real Property Article defines security deposits as,
"any payment of money, including payment of the last month's rent in advance of the time it is due, given to a landlord by a tenant in order to protect the landlord against nonpayment of rent, damage due to breach of lease, or damage to the leased premises, common areas, major appliances, and furnishings."
Md.Code (1974, 2003 Repl.Vol.), § 8–203 of the Real Property Article.

6. Section 8–213(b) states:
(b) *Fees other than security deposit.*—(1)(i) If a landlord requires from a prospective tenant any fees other than a security deposit as defined by § 8–203(a) of this subtitle, and these fees exceed $25, then the landlord shall return the fees, subject to the exceptions below, or be liable for twice the amount of the fees in damages....
(2) The landlord may retain only that portion of the fees actually expended for a credit check or other expenses arising out of the application, and shall return that portion of the fees not actually expended on behalf of the tenant making application.
Md.Code (1974, 2003 Repl.Vol.), § 8–213 of the Real Property Article.

settlement, we bring an enforcement action pursuant to the Consumer Protection Act."

The Division learned of SureDeposit's response when, on 25 November 2003, it was served with SureDeposit's complaint for declaratory judgment,[7] filed in the Circuit Court for Baltimore County on 9 October 2003, together with requests for production of documents, admissions, and interrogatories. The Division countered on 4 December 2003 by propounding its own interrogatories and a request for production of documents.

In a contemporaneous time frame, the Division filed an administrative statement of charges against SureDeposit and two of its officers on 26 November 2003. The Division's charges may be categorized in three groupings: 1) those alleging violations of the SDL because the surety bond product is claimed to be a security deposit under § 8–203(a)(3); 2) those alleging violations of the SDL because, alternatively, the surety bond product is claimed to be a "fee other than a security deposit" under § 8–213(b); and 3) those alleging violations of the CPA, some of which overlapped portions of the allegations regarding the SDL.

Allegations supporting the assertion that the surety bond product is a security deposit under § 8–203(a)(3) included: 1) SureDeposit did not disclose to the tenants their rights and protections under the SDL;[8] 2) the surety bond product may

---

7. Contrary to SureDeposit's claim on appeal that it asked for declarations solely as to the allegations of violation of the SDL, the complaint prayed the Circuit Court to issue a declaratory judgment "that its surety bond program does not violate Md. Comm. L.Code Ann. Section 13–301 or Section 13–303 or Md. Real Property Code Ann. Section 8–203 or Section 8–213."

8. Section 8–203.1 requires that a tenant that pays a security deposit receive a receipt that notifies the tenant of legal rights including the right to have the property inspected for damages at the inception and termination of the tenancy, prompt written notice of damages claimed and costs incurred by the landlord, and the right to receive up to three times the security deposit withheld and attorney's fees from the landlord should it violate the SDL. Md.Code (1974–2003 Repl.Vol.) § 8–203.1 of the Real Property Article.

expose tenants to liabilities that exceeded those that landlords would normally claim against traditional security deposits; 3) SureDeposit paid damage claims to landlords without requiring the landlords to submit evidence or affording tenants the right to be present at the inspections or contest the claims; 4) SureDeposit paid damage claims without providing to tenants written lists of damages claimed or costs incurred; and 5) the premiums paid by tenants for the surety bond products were non-refundable.

The Division also alleged alternatively that, if the surety bond product was not a security deposit, it was a fee "other than security deposit" under § 8–213(b).[9] In that event, the Division alleged that the surety bond product premiums were neither non-refundable nor expended for actual expenses arising out of credit checks or the application process.

The Division lastly charged violations of the CPA. One set of alleged violations appear to be grounded on § 13–301(1) of the CPA, which protects consumers from false or misleading statements that have the "capacity, tendency, or effect of deceiving or misleading consumers." Supporting allegations included: 1) the Acknowledgment Form did not disclose adequately to consumers that they remained liable for damages due to nonpayment of rent, breach of lease, or damages to the rental premises in excess of wear and tear; 2) the Acknowledgment Form did not disclose adequately that, although the Surety is obligated to satisfy the claims by the landlord up to the bond amount, the tenant is obligated to reimburse the Surety for sums expended to pay those claims; 3) SureDeposit's Acknowledgment Form and advertising brochure promoted the benefit of its "bond product" without actually delivering an actual copy of the SureDeposit "bond product" to the consumers; and 4) the Acknowledgment Form did not disclose adequately that tenants may incur liabilities from claims that

---

9. A landlord must return a § 8–213(b) fee to a tenant after deducting for actual fees from a credit check of the tenant or other expenses "arising out of the application...." Md.Code (1974, 2003 Repl.Vol.) § 8–213(b) of the Real Property Article.

may exceed what the landlords could have deducted legally from traditional security deposits.

Another set of violations appear to be grounded on § 13–301(3) of the CPA, which protects consumers from a "[f]ailure to state a material fact if the failure deceives or tends to deceive." Included in these charges were 1) SureDeposit did not disclose that landlords received fees from SureDeposit for the sale of the surety bond product; 2) SureDeposit did not provide the mandatory notice required upon receipt of a security deposit under § 8–203.1 of the Real Property Article; 3) the Acknowledgment Form failed to disclose that landlords may obtain satisfaction of claims via the surety bond product without honoring the tenants' rights under the SDL or submitting any evidence in support of their claims; and 4) the Acknowledgment Form made no disclosure to tenants that the purchase of the surety bond product would affect the tenants' statutory rights and protections afforded them under the SDL.

In its memorandum of law[10] in support of its motion to dismiss SureDeposit's complaint in the Circuit Court, the Division explained that it had primary jurisdiction in the matter because the dispute included an interpretation of a law in its area of specific expertise—the Consumer Protection Act. Further, the Division argued that the action for declaratory relief was inappropriate as it would not resolve fully the dispute between SureDeposit and the Division. Even if the Circuit Court declared that SureDeposit had not violated the SDL, such a judgment would not address the alleged violations based solely on the CPA. Lastly, it contended that a declaratory judgment in favor of SureDeposit would not address any of the alleged violations by SureDeposit's officers named in the Division's administrative statement of charges because they were not named parties in the complaint.

---

**10.** The memorandum of law referenced attached exhibits, which included the Division's administrative statement of charges, a SureDeposit "Blanket Bond" agreement between FCIC and a property owner, a SureDeposit Bond Acknowledgment Form, and a SureDeposit advertising brochure.

After receiving the Division's responses to SureDeposit's request for production of documents, interrogatories, and admissions, SureDeposit filed on 14 January 2004 its opposition to the Division's motion to dismiss. It claimed that the Division's assertion of primary jurisdiction was off-the-mark because SureDeposit's complaint asked solely for a declaratory judgment interpreting the SDL. *But see, supra,* at 7, n. 7. As SureDeposit's argument continued, concurrent jurisdiction also did not exist because the Division possessed no particular expertise in matters of interpreting the SDL; thus, the Circuit Court appropriately could interpret the SDL and issue the requested declaratory judgment. SureDeposit also claimed that the Circuit Court's declaration as to the SDL would dispose completely of all of the Division's claims in its administrative statement of charges. This was so because SureDeposit believed that all of the Division's alleged violations of the CPA were dependent on whether the SDL applied to SureDeposit's conduct.

Upon receiving notice of the parties' agreement to waive a hearing on the motion to dismiss, the Circuit Court dismissed SureDeposit's complaint on 4 February 2004 with a simple order.

## II.

SureDeposit notes, by footnote in its brief, frustration with the "plain vanilla" order employed by the Circuit Court to memorialize the grant of the Division's motion to dismiss.[11] Although the Division does not appear to have responded directly to this complaint in SureDeposit's brief (nor should it necessarily respond to a contention slipped into a footnote, bereft of supporting authority), the point sounds a procedural

---

11. Without embellishment or requesting a specific remedy, Footnote 2 in SureDeposit's brief states, "[t]he consequences of such an action are plain in this case—nobody knows the rationale for the trial court's decision, and thus the parties to this appeal must brief multiple issues to cover all bases."

note that an appellate court must recognize, at the outset, in selecting the proper standard of review to be applied.

The sparely worded order used by the Circuit Court makes it somewhat ambiguous as to which possible procedural vehicle the Circuit Court intended to employ to dispose of SureDeposit's complaint.[12] Each of the two possible options, whether the Circuit Court disposed of SureDeposit's complaint pursuant to a Rule 2–322(b) motion to dismiss or converted it into a motion for summary judgment under Rule 2–322(c) and Rule 2–501, has consequences.

■ In our review of the grant of a motion for dismissal under Md. Rule 2–322(b) we accept all well-pled facts in the complaint, and reasonable inferences drawn from them, in a light most favorable to the non-moving party. *Porterfield v. Mascari II, Inc.*, 374 Md. 402, 414, 823 A.2d 590, 597 (2003). Typically, "[t]he object of the motion is to argue that as a matter of law relief cannot be granted on the facts alleged." *See* Paul V. Niemeyer & Linda M. Schuett, *Maryland Rules Commentary*, 206 (3d ed.2003). Thus, consideration of the universe of "facts" pertinent to the court's analysis of the motion are limited generally to the four corners of the complaint and its incorporated supporting exhibits, if any.

■ On the other hand, if a trial court treats a motion to dismiss as a "speaking demurrer" under Md. Rule 2–322(c) and considers "matters outside the pleading" (see Niemeyer & Schuett, *supra*, at 206–207, explaining that Rule 2–322(b) serves the same function as the common law demurrer but also permits a "speaking demurrer") the trial court must treat

---

12. We are aware that, as a matter of common legal practice, parties moving for dismissal or summary judgment often attach to their pretrial motions plainly and sparely worded proposed orders for the court to sign. The Court of Special Appeals, however, previously has advised parties and trial courts to be specific when requesting relief from the court on motions to dismiss. *Bleich v. Florence Crittenton Svcs. of Balt., Inc.*, 98 Md.App. 123, 133, 632 A.2d 463, 468 (1993); *Hrehorovich v. Harbor Hosp. Ctr., Inc.*, 93 Md.App. 772, 784, 614 A.2d 1021, 1027 (1992). To do otherwise may be "risky business." *Hrehorovich*, 93 Md.App. at 784, 614 A.2d at 1027.

(and is presumed to have treated) the Rule 2–322(b) motion as a motion for summary judgment under Md. Rule 2–501. Md. Rule 2–322(c); *Dual v. Lockheed Martin, Inc.*, 383 Md. 151, 161, 857 A.2d 1095, 1100 (2004); *see Oak Crest Village, Inc. v. Murphy*, 379 Md. 229, 239, 841 A.2d 816, 822 (2004) (observing that the trial court treated a motion to dismiss as "one for summary judgment" under Md. Rule 2–322(c)). Unless the court states to the contrary, it is presumed to have considered also the factual allegations presented by the movant in its exhibits attached to the so-called motion for dismissal.

■ Because the Circuit Court in the present case did not state, in its order of dismissal or otherwise, that, in granting the Division's motion to dismiss, it did not consider the factual allegations and exhibits beyond those in SureDeposit's complaint, the default provision established by the pertinent Rules and our cases interpreting them dictate that we review the action as the grant of summary judgment.

■ A motion for summary judgment is granted where "there is no genuine dispute as to any material fact and that the party is entitled to judgment as a matter of law." Md. Rule 2–501. The standard for review is "whether the trial court was legally correct." *Sadler v. Dimensions Healthcare Corp.*, 378 Md. 509, 533, 836 A.2d 655, 669 (2003) (quoting *Goodwich v. Sinai Hosp. of Balt., Inc.*, 343 Md. 185, 204, 680 A.2d 1067, 1076 (1996). This review must determine first if a "dispute of material fact exists." *Todd v. Mass Transit Admin.*, 373 Md. 149, 154–55, 816 A.2d 930, 933 (2003) (citations omitted). If the record reveals there is no material fact in dispute. then the motion may be granted if it is correct as a matter of law. *Id.* at 155, 816 A.2d at 933.

In the case before us, no genuine dispute of a material fact was generated. Thus, were this other than an action for declaratory relief, we simply would move next to analysis of the purely legal question(s) presented. Because additional considerations apply to the proper disposition of declaratory judgment actions, however, we must remind ourselves what

those additional considerations are and determine how they may apply to the present case.

## III.

### A.

■■ A court "may grant a declaratory judgment;" therefore, declaratory judgment generally is a discretionary type of relief. Md.Code (1973, 2002 Repl.Vol.), § 3–409(a) of the Courts and Judicial Proceedings Article. The refusal to grant a discretionary order will be reversed on appeal if the judge abused his or her discretion. *A.S. Abell Co. v. Sweeney,* 274 Md. 715, 720, 337 A.2d 77, 81 (1975) (holding that " 'some discretion is left to the courts' in granting declaratory relief" (quoting *Grimm v. County Comm'rs of Washington County,* 252 Md. 626, 632, 250 A.2d 866, 869 (1969)).

■■ We have "admonished trial courts that, when a declaratory judgment is brought, and the controversy is appropriate for resolution by declaratory judgment, the court must enter a declaratory judgment. . . ." *Salamon v. Progressive Classic Ins. Co.,* 379 Md. 301, 308 n. 7, 841 A.2d 858, 862 n. 7 (2004) (quoting *Jackson v. Millstone,* 369 Md. 575, 594–95, 801 A.2d 1034, 1045–46 (2002)). We have found this standard instructive when reviewing appeals of declaratory judgment actions dismissed on pre-trial motions. *See, e.g., Jackson v. Millstone,* 369 Md. 575, 594–95, 801 A.2d 1034, 1045 (2002); *Allstate v. State Farm Mut. Auto. Ins. Co.,* 363 Md. 106, 117 n. 1, 767 A.2d 831, 837 n. 1 (2001); *Bushey v. N. Assurance Co. of Am.,* 362 Md. 626, 651, 766 A.2d 598, 611 (2001); *Harford Mut. Ins. Co. v. Woodfin Equities Corp.,* 344 Md. 399, 414, 687 A.2d 652, 659 (1997). Of equal importance, and more instructive in this case, is the logical converse, that is, when a declaratory judgment action is brought and the controversy is not appropriate for resolution by declaratory judgment, the trial court is neither compelled, nor expected, to enter a declaratory judgment. *See Popham v. State Farm Mut. Ins. Co.,* 333 Md. 136, 140–41 n. 2, 634 A.2d 28, 30 n. 2 (1993).

## B.

The purpose of the Declaratory Judgment Act is to "settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations." Md.Code (1973, 2002 Repl.Vol.), § 3–402 of the Courts and Judicial Proceedings Article. Section 3–402 of the Declaratory Judgment Act states that it should be "liberally construed and administered." In fact, the broad, inclusive language of § 3–406 of the CPA reflects this liberal application, granting courts the power to grant declaratory relief to, "[a]ny person interested under a deed, will, trust, land patent, written contract, or other writing constituting a contract, or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, administrative rule or regulation, contract, or franchise...."

Declaratory relief, however, is barred by some statutory and judicially-crafted restrictions in limited circumstances. *See Md.-Nat'l Capital Park and Planning Comm'n v. Washington Nat'l Arena,* 282 Md. 588, 595, 386 A.2d 1216, 1222 (1978). For example, declaratory relief in a given case is barred under § 3–409(b) of the Declaratory Judgment Act when a special form of remedy is otherwise provided by statute. We have held that declaratory relief is inappropriate in the absence of a justiciable controversy. *Md. State Admin. Bd. of Election Laws v. Talbot County,* 316 Md. 332, 339, 558 A.2d 724, 727 (1989) (citations omitted) (explaining that declaratory judgment is inappropriate where issue is moot or where it will not serve a useful purpose or terminate a controversy). We also have held that declaratory judgment is an inappropriate remedy where the primary jurisdiction doctrine properly is implicated. *Luskin's Inc. v. Consumer Prot. Div.,* 338 Md. 188, 657 A.2d 788 (1995).

Primary jurisdiction is a judicially created rule designed to coordinate the allocation of functions between courts and administrative bodies. The doctrine is not concerned with subject matter jurisdiction or the competence of a court to adjudicate, but rather is predicated upon policies of judicial restraint: 'which portion

of the dispute—settling apparatus—the courts or the agencies—should, in the interests of judicial administration, first take the jurisdiction that both the agency and the court have.' It comes into play when a court and agency have concurrent jurisdiction over the same matter, and there is no statutory provision to coordinate the work of the court with that of the agency.

\* \* \* \* \* \*

[P]rimary jurisdiction is relevant only ... where the claim is initially cognizable in the courts but raises issues or relates to subject matter falling within the special expertise of an administrative agency.

*Washington Nat'l Arena,* 282 Md. at 601–602, 386 A.2d at 1225–26 (citations and footnote omitted). We have recognized that an additional concern of the primary jurisdiction doctrine is the preservation of the "uniformity and integrity of the regulatory scheme...." *Id.* at 603, 386 A.2d at 1227 (citing *Texas & Pac. Ry. v. Abilene Cotton Oil Co.,* 204 U.S. 426, 440, 27 S.Ct. 350, 355, 51 L.Ed. 553, 558–59 (1907)). An administrative agency decision, particularly in its area of special expertise, helps a court because the court usually relies on the "special expertise and technical knowledge normally employed in administrative fact-finding and rule-making." *Id.* For example, in *Fosler v. Panoramic Design, Ltd.,* we stated that an "administrative agency's interpretation and application of the statute which the agency administers should ordinarily be given considerable weight by reviewing courts." 376 Md. 118, 136, 829 A.2d 271, 282 (2003) (quoting *Md. Div. of Labor v. Triangle Gen. Contractors, Inc.,* 366 Md. 407, 416, 784 A.2d 534, 539 (2001)). This reliance, however, is not blind. A court does not err or abuse its discretion if it seeks to answer a purely legal question that merely overlaps an available administrative remedy. *See Washington Nat'l Arena,* 282 Md. at 602–604, 386 A.2d at 1226–27.

As a result, a trial court, faced with a request for a judicial remedy such as declaratory judgment in a situation where a related administrative agency action is pending, is usually

confronted with three possible courses of action. First, the court may defer wholly to the administrative regulatory scheme and terminate the petition or complaint, leaving the matter to disposition by the administrative agency, without prior judicial intervention. In that situation, judicial review of the final agency decision usually will be available to an aggrieved party.

Secondly, the court may stay its consideration of the invoked judicial remedy and await the result of the administrative proceedings before addressing the appropriateness of the relief sought in the litigation. *Maryland Reclamation Assocs. v. Harford County*, 382 Md. 348, 367, 855 A.2d 351, 362 (2004) (directing stay of judicial proceeding until administrative remedies exhausted); *Arroyo v. Bd. of Educ.*, 381 Md. 646, 660, 851 A.2d 576, 584–85 (2004) (observing that a party may file an independent judicial action during pendency of primary administrative proceedings and the trial court may stay the judicial action but, should not decide it until the "final administrative *determination is made*"); *Md.–Nat'l Capital Park & Planning Comm'n v. Crawford*, 307 Md. 1, 18, 511 A.2d 1079, 1087–88 (1986) (explaining that a stay by the trial court may be appropriate when an administrative remedy and an independent judicial remedy beside judicial review of the administrative decision arises). Once the administrative process runs its course, the court may then entertain the pending judicial action (with or without any subsequently filed action for judicial review), giving due weight and deference to the administrative agency's decision in its area of particular expertise. *Crawford*, 307 Md. at 18, 511 A.2d at 1088.

Third, the court may exercise its discretion, if appropriate to do so, and provide a judicial remedy in advance of final action in the administrative proceeding. This option is best used when the court is faced with a purely legal question that is independent of or merely overlaps an administrative agency's area of expertise. *See Washington Nat'l Arena*, 282 Md. at 603–604, 386 A.2d at 1226–27 (holding that evaluating the validity of a contract clause that waived a party's right to challenge whether real estate improvements were subject to

real estate taxes was a purely legal question that the Property Tax Assessment Appeal Board had no expertise to resolve because its primary expertise lay in reviewing the assessment and valuation of real property for tax purposes).[13]

## C.

 SureDeposit here first questions whether the Division has primary jurisdiction concerning the allegations of violations of the SDL.[14] We summarized the three general and relevant types of potentially overlapping administrative and judicial jurisdictional considerations in *Zappone v. Liberty Life Insurance Company*, 349 Md. 45, 706 A.2d 1060 (1998).[15] The first category addresses situations where the administrative remedy is intended by the Legislature to be exclusive and must be exhausted before recourse may be appropriate to the courts. *Id.* at 60, 706 A.2d at 1067. When a statute explicitly directs an administrative process and remedy, our policy is set clearly by the General Assembly to maintain the uniformity of

---

**13.** The trial court should be alert to situations where exercising such discretion may be contrary to the wisdom of the general rule requiring a party to "run the administrative remedial course before seeking a judicial solution." *Clinton v. Bd. of Educ.*, 315 Md. 666, 678, 556 A.2d 273, 279 (1989); *but, compare the majority and dissenting opinions in Attorney Grievance Comm'n v. Davis*, 379 Md. 361, 842 A.2d 26 (2004), *and Attorney Grievance Comm'n v. Lichtenberg*, 379 Md. 335, 842 A.2d 11 (2004).

**14.** Section 13–101, *et seq.*, of the Commercial Law Article specifically creates the Division and enables it to enforce and administer the CPA. While the CPA grants the Division no explicit power to administer the SDL, the CPA does prohibit unfair practices under § 13–301 in the sale, or offer for sale, of "any consumer goods, consumer realty, or consumer services...." § 13–303. We could find no parallel provisions in the Real Property Article of the Code committing enforcement or administrative powers to any particular executive branch agency with regard to the SDL.

**15.** We recognized a fourth category, not relevant in the present case, where the administrative agency's enabling statute expressly requires the judicial remedy to be exhausted first. *Fosler*, 376 Md. at 130–33, 829 A.2d at 278–80 (holding that § 8–408 of the Home Improvement Law (Md.Code, Business Regulation Art.) explicitly requires stay of the administrative action and exhaustion of the judicial remedy).

the regulatory scheme. *Id.*[16] One "special form" of statutory remedy is where a party is required to submit its complaints to the exclusive remedy of an administrative agency. *See Id.* at 62, 706 A.2d at 1068–69 (listing exclusive remedy provisions). As a result, a preemptively or prematurely filed petition for declaratory judgment, where there is provided an exclusive administrative remedy for the subject matter, should not then be entertained, if at all, until the administrative remedy is exhausted.

SureDeposit asserted at oral argument before us a proposition with which we must agree, that the CPA specifies no exclusive administrative remedy committed to the Division for resolution of a dispute involving the SDL. SureDeposit's complaint and the Division's statement of charges clearly implicate both the CPA and the SDL. The Division's administrative statement of charges concedes that at least *some* of its charges are based on denying tenants their rights under the security deposit laws because the surety bond product constitutes either "*security deposits* pursuant to § 8–203 of the Real Property Article" or "*fees other than security deposits* under the Application Fee Law." (emphasis added). The Division conceded further that, at most, only "the majority" of the charges are based solely on allegations "that SureDeposit violated the Consumer Protection Act," leaving at least a minority of the charges based on the SDL. This mixing of claimed violations from statutes within and without the agency's particular area of expertise, however, does not, on its face, justify bifurcating the resolution of the global dispute in the way SureDeposit desires, as we shall explain.

We next consider the second category embracing situations where the administrative process and remedy is intended to be primary, but not exclusive, relative to seeking

---

16. Analysis under the Declaratory Judgment Act reaches the same result. Section 3–409(b) states that if "a statute provides a special form of remedy for a specific type of case, that statutory remedy shall be followed in lieu of a proceeding under this subtitle." Md.Code (1973, 2002 Repl.Vol.) of the Courts and Judicial Proceedings Article.

judicial relief. In that case, the party anxious for judicial involvement nonetheless must exhaust the administrative remedy provided and then seek judicial review of the administrative action, if available, before a court "can properly adjudicate the merits of the alternative remedy." *Zappone*, 349 Md. at 60, 706 A.2d at 1068.[17] SureDeposit alleges that no administrative remedy exists under the CPA for the present dispute because SureDeposit seeks only a declaratory judgment regarding its conduct with regard to the SDL. The Division disagrees, asserting that, even if SureDeposit's complaint sought only a resolution of the alleged SDL violations, a significant number of the administrative charges are propounded in areas within the Division's acknowledged expertise in matters alleging CPA violations.

SureDeposit's position obfuscates the plain language of its complaint which clearly requests the Circuit Court to declare "that its surety bond program does not violate Md. Comm. L.Code Ann. Section 13–301 or Section 13–303 or Md. Real Property Code Ann. Section 8–203 or Section 8–213." Furthermore, even if one were to read-out of SureDeposit's complaint the request for a declaratory judgment regarding the claimed CPA violations, an administrative determination by the Division as to the charges of SureDeposit's alleged violations of the CPA could be helpful to a court in considering the facially related allegations as to violations of the SDL. "Ordinarily, when there are two forums available, one judicial and the other administrative, ... and no statutory directive indicating which should be pursued first, a party is often first required to run the administrative remedial course before seeking a judicial solution." *Clinton v. Bd. of Educ.*, 315 Md. 666, 678, 556 A.2d 273, 279 (1989).

The CPA provides, "[i]f a person is aggrieved by an order or decision of the Division, he may institute any appropriate

---

**17.** The third category addressed in *Zappone*, *fully* concurrent jurisdiction, not relevant here as our subsequent analysis reveals, permits the pursuit of "the judicial remedy without the necessity of invoking and exhausting the administrative remedy." 349 Md. at 61, 706 A.2d at 1068.

proceeding he considers necessary." Md.Code (1975, 2000 Repl. Vol.), § 13–407 of the Commercial Law Article. Section 13–407 permits an alleged violator ordinarily to obtain a judicial remedy only *after* the person is aggrieved by an order or decision by the Division.[18]

It is clear that an administrative remedy was available to resolve the alleged violations of the CPA and even the related claims based on the SDL.[19] The declaratory judgment as to the SDL claims sought by SureDeposit would not terminate the entire controversy, which includes numerous independent allegations of violations of the CPA. Even if SureDeposit's theory that an interpretation of the SDL would render an independent interpretation of the claimed CPA violations unnecessary, it is not entirely clear on the record of this case at

---

**18.** Section 20–I of Article 83, the predecessor of § 13–407, provided that a "[p]erson who disagrees with or is aggrieved by any order or decision of the division may institute *legal proceedings* as he deems necessary." 1974 Md. Laws, Chap. 609 (emphasis added). In the Revisor's Notes the following year, it was explained that the textual language was changed to "*appropriate proceedings*" to avoid confusion and make clear that a violator may seek both appropriate remedies at law or equity. 1975 Md. Laws, Chap. 49.

**19.** An administrative investigation pursuant to the CPA is initiated either after a consumer complaint or by the Division on its own initiative. § 13–204 of the Commercial Law Article. An investigation may proceed from a complaint from any potential or actual violation of the CPA; thus, the Division may begin an investigation on any complaint, even one largely based on issues outside the CPA, if a potential violation of the CPA also occurred. § 13–204. In the course of the investigation of a potential CPA violation, the Division may issue an administrative subpoena for a witness or compel production of documents. § 13–405. A public hearing may be held to determine if an alleged violator actually violated the CPA. § 13–403(a). This administrative hearing permits an alleged violator to present evidence and cross-examine witnesses. § 13–403(a)(3). Regardless of whether a violation of the CPA is found, the Division must state its findings of fact and law after the hearing. Only in the event that a violation of the CPA is found by a preponderance of the evidence, may the Division order administrative remedies against the violator. § 13–403(b). Thus, regardless of the outcome of alleged violations of another statute, the Division can only order a post-hearing administrative remedy under the CPA if the CPA itself is violated. Otherwise, it must issue an order dismissing the complaint. § 13–403(b)(2).

this juncture, that the declaratory judgment sought could adjudicate the Division's charges against SureDeposit's officers. By the same token, as SureDeposit's complaint includes a request for a declaration as to the viability of the Division's CPA claims, as it facially does, it would be inappropriate for a court to accept that invitation in advance of the Division being allowed to bring to bear, through the designated regulatory scheme, its particular expertise to render a final administrative decision regarding the CPA matters. There is little doubt that a reviewing court would be in a better position to render global and appropriate relief in this dispute were it to have the benefit of the Division's final view on the panoply of claims.

■ In Maryland, "a court may grant a declaratory judgment or decree in a civil case, if it will serve to terminate the uncertainty or controversy giving rise to the proceeding. . . ." Md.Code (1973, 2002 Repl.Vol.), § 3–409(a) of the Courts and Judicial Proceedings Article. When declaratory relief will not terminate a controversy, it should not be granted. *Hamilton v. McAuliffe*, 277 Md. 336, 340, 353 A.2d 634, 637 (1976) (recognizing the "well settled" requirement for termination of the controversy). We have also explained that declaratory relief is inappropriate

> . . . where another remedy will be more effective or appropriate under the circumstances. In these cases it is neither useful nor proper to issue the declaration. In some of these cases, . . . the declaration is refused on jurisdictional grounds. In others, the refusal is justified on discretionary grounds.

*Haynie v. Gold Bond Bldg. Prods.*, 306 Md. 644, 651, 511 A.2d 40, 43 (1986) (quoting *Grimm v. County Comm'rs*, 252 Md. 626, 637, 250 A.2d 866, 871–72 (1969) (quoting Edwin Borchard, *Declaratory Judgments*, 302 (2d ed.1941))). As a result, when a court believes "that *more* effective relief can and should be obtained by another procedure . . . it is justified in refusing a declaration because of the availability of another remedy." Borchard, *supra*, at 303.

We find Professor Borchard's observation particularly compelling in this case. In the present case, we have identified an administrative remedy prescribed by the Legislature that is available and appropriate to address the alleged violations of the CPA and even the related claims under the SDL. A declaratory judgment in favor of SureDeposit on the SDL will not terminate, necessarily or conclusively, the controversy regarding the alleged violations of the CPA. While the Division may not possess statutorily-recognized expertise regarding the assessment of matters arising under the SDL, upon subsequent judicial review of the agency's final decision, if appropriate, the Division's decisions regarding the SDL claims may be reviewed in the same action even if those particular decisions are not entitled to the deference accorded ones made within the agency's area of special expertise. Thus, under § 3–409(a) of the Declaratory Judgment Act alone, declaratory judgment was inappropriate at the time sought in this case.

## D.

It is obvious in this case that Division review and action will be effective and efficient because it will address the allegations concerning both the CPA and the SDL. Thus, it is impossible to conclude, as a matter of law, that the Circuit Court's decision to reject SureDeposit's complaint is well removed from this Court's declaratory judgment jurisprudence decided over the last sixty years. Lastly, it is no coincidence that this result is consistent with the doctrine of primary jurisdiction that "a party is often first required to run the administrative remedial course before seeking a judicial solution." *Clinton,* 315 Md. at 678, 556 A.2d at 279.

*JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.*