HARRELL, J.,
dissenting.
I dissent. I do so because the Majority opinion fails to persuade me that adoption by Maryland of the “Clayton inadequacy test” announced in Clayton v. Int’l Union, 451 U.S. 679, 689, 101 S.Ct. 2088, 2095, 68 L.Ed.2d 538 (1981) (quoted in Maj. Op. at 570, 109 A.3d at 102), fits comfortably the circumstances of the present case. First, the Clayton inadequacy test for exceptions from the general exhaustion requirement is limited explicitly to claims under § 301 of the Labor Management Relations Act, 1947, 29 U.S.C. § 185(a) (2012), for “violation[s] of contracts between an employer and a labor organization representing employees in an industry affecting commerce ..., or between any such labor organizations.” See Maj. Op. at 569 n. 8, 109 A.3d at 101 n. 8. The present case does not fit within the universe of claims for which the Clayton test was devised. Second, the application of the rule announced in the Majority opinion would allow a plaintiff to avail him or herself of the Clayton test exceptions to skirt the exhaustion requirement merely by including in the complaint a prayer for monetary relief and allegations that the relevant labor organization’s procedures do not authorize a remedy that contemplates the direct award of money damages or restitution.[1]
*582 I find greater comfort in deciding the present case by analogy to Maryland administrative law explicating how Maryland courts resolve issues of primary and concurrent jurisdiction regarding maintenance of a proceeding before an administrative agency and pursuit of judicial action. On this score, Converge Services Group, LLC v. Curran, 383 Md. 462, 860 A.2d 871 (2004), is instructive. In Converge, we held that, where the courts and an administrative agency have concurrent jurisdiction over a claim, the claim should first run its course through the appropriate administrative scheme before court action may be appropriate. Converge, 383 Md. at 482-86, 860 A.2d at 883-85. Even though the claims in Converge *583 implicated areas of law in which the relevant agency had no statutorily-recognized expertise, we concluded that a claim should still run its course through the administrative procedures before judicial oversight may be appropriate. Converge, 383 Md. at 486, 860 A.2d at 885. Reasoning from these circumstances by analogy, Lovelace should have exhausted the remedies available to him through the constitution of Amalgamated Transit Union, Local 1300 (“the Union”) before bringing in court his defamation action, even though the Union may not have expertise in defamation law per se and could not award directly monetary relief.
The dispute in Converge was between Converge Services Group, LLC, d/b/a SureDeposit, Inc. (“SureDeposit”), and the Consumer Protection Division of the Office of the Maryland Attorney General (“the Division”). Converge, 383 Md. at 466, 860 A.2d at 873. After SureDeposit began marketing and selling “surety bond produces]” to Maryland residential real estate tenants to be used by those tenants in lieu of traditional security deposits, the Division commenced an investigation. Id. The Division believed that SureDeposit’s trade practices violated the Maryland Consumer Protection Act, Md.Code (1975, 2000 Repl.Vol.), §§ 13-101, et seq., of the Commercial Law Article (“CPA”), and the Maryland Security Deposit Law and Application Fee Law, Md.Code (1974, 2003 Repl.Vol.), §§ 8-203 and 8-213 of the Real Property Article (collectively, “SDL”). Id. Unsatisfied by the course of negotiations with the Division, and anticipating a potential contested administrative process regarding the Division’s probable filing of administrative charges, SureDeposit filed pre-emptively a complaint in the Circuit Court for Baltimore County seeking declaratory relief that the SDL did not apply to SureDeposit’s “surety bond product” and, assuming that relief was granted, that SureDeposit had not violated the CPA. Id.; see Converge, 383 Md. at 470-71, 860 A.2d at 876. Very shortly thereafter, the Division filed an administrative statement of charges against SureDeposit, alleging multiple violations of the SDL and CPA. Id.
*584 The actions proceeded briefly on parallel tracks. Converge, 383 Md. at 471, 860 A.2d at 876. The Division moved eventually for dismissal of the complaint in the Circuit Court action arguing, inter alia, that the Division, as an administrative agency with recognized expertise with regard to administering and interpreting the CPA, exercised primary jurisdiction over the entire dispute because the dispute included an interpretation of a law in its area of specific expertise—the CPA. Converge, 383 Md. at 466-67, 473, 860 A.2d at 873, 877. SureDeposit disagreed, arguing that the alleged violations of the CPA were dependent on whether the SDL applied, an area of law in which the Division possessed no particular expertise. Converge, 383 Md. at 474, 860 A.2d at 878. The Circuit Court dismissed SureDeposit’s complaint, at which point SureDeposit noted an appeal to the Court of Special Appeals. Converge, 383 Md. at 467, 860 A.2d at 873. We issued a writ of certiorari, on our initiative and before the intermediate court could decide the appeal. Converge, 383 Md. at 467, 860 A.2d at 873-74. Because declaratory judgments are inappropriate remedies where the primary jurisdiction doctrine properly is implicated, Converge, 383 Md. at 478, 860 A.2d at 880, we were asked to consider whether the Division had “primary jurisdiction” over the subject matter of the complaint where the issues raised in the complaint required interpretation of the SDL before reaching the interpretation of the CPA.[2] Converge, 383 Md. at 467, 860 A.2d at 874.
We began by discussing primary jurisdiction principles:
“[Primary jurisdiction] is a judicially created rule designed to coordinate the allocation of functions between courts and administrative bodies. The doctrine is not concerned with subject matter jurisdiction or the competence of a court to adjudicate, but rather is predicated upon policies of judicial restraint: “which portion of the dispute-settling appara *585 tus—the courts or the agencies—should, in the interests of judicial administration, first take the jurisdiction that both the agency and the court have.” It comes into play when a court and agency have concurrent jurisdiction over the same matter, and there is no statutory provision to coordinate the work of the court with that agency.
[Pjrimary jurisdiction is relevant only ... where the claim is initially cognizable in the courts but raises issues or relates to subject matter falling within the special expertise of an administrative agency.”
Converge, 383 Md. at 478-79, 860 A.2d at 880-81 (quoting Maryland-National Capital Park and Planning Commission v. Washington National Arena, 282 Md. 588, 601-02, 386 A.2d 1216, 1225-26 (1978) (footnote omitted) (citations omitted)); see SEFAC Lift & Equipment Corp. v. Mass Transit Administration, 367 Md. 374, 380, 788 A.2d 192, 196 (2002) (“We have long held, and have recently confirmed, that ‘[w]here an administrative agency has primary or exclusive jurisdiction over a controversy, the parties to the controversy must ordinarily await a final administrative decision before resorting to the courts for resolution of the controversy.’ ” (citations omitted)). We identified several policy concerns underlying the primary jurisdiction doctrine, including preservation of a uniform regulatory scheme, and the benefit to a reviewing court of the “‘special expertise and technical knowledge normally employed in administrative fact-finding and rule-making.’ ” Converge, 383 Md. at 479, 860 A.2d at 881 (quoting Washington National Arena, 282 Md. at 603, 386 A.2d at 1227).
We noted that in some situations, the “administrative remedy is intended by the Legislature to be exclusive and must be exhausted before recourse may be appropriate to the courts.” Converge, 383 Md. at 481, 860 A.2d at 882. In others, the administrative process and remedy might be “intended to be primary, but not exclusive, relative to seeking judicial relief.” Converge, 383 Md. at 482, 860 A.2d at 883; see Prince George’s County v. Ray’s Used Cars, 398 Md. 632, 645, 922 A.2d 495, 503 (2007) (“Moreover, while there is no presump *586 tion that an administrative remedy is intended to be exclusive when a recognized alternative judicial remedy exists, there is a strong presumption that the administrative remedy is intended to be primary, and ... a claimant cannot maintain the alternative judicial action without first invoking and exhausting the administrative remedy.” (internal quotations omitted)); Public Service Commission v. Wilson, 389 Md. 27, 86-92, 882 A.2d 849, 884-88 (2005) (requiring exhaustion of an administrative appeal process where an employee of the Maryland Public Service Commission was terminated); N.A.A.C.P. v. Golding, 342 Md. 663, 679, 679 A.2d 554, 562 (1996) (“Even when a dispute between an organization and its members is of a character that warrants judicial intervention, courts have typically required exhaustion of internal remedies as a prerequisite to judicial involvement.”). Regardless, “ ‘when there are two forums available, one judicial and the other administrative, ... and no statutory directive indicating which should be pursued first, a party is often first required to run the administrative remedial course before seeking a judicial solution.’ ” Converge, 383 Md. at 483, 860 A.2d at 883 (quoting Clinton v. Board of Education, 315 Md. 666, 678, 556 A.2d 273, 279 (1989)).
In Converge, we examined the relevant portion of the CPA,[3] and concluded that alleged violators were permitted ordinarily to obtain a judicial remedy only after the person was aggrieved by an order or decision by the Division. Converge, 383 Md. at 483-84, 860 A.2d at 883-84. We agreed with SureDeposit that the CPA did not commit exclusive administrative remedies to the Division for resolution of disputes involving the SDL, and the Division conceded that at least some of the charges were based on the SDL exclusively. Converge, 383 Md. at 482, 860 A.2d at 883. We concluded, however, that the mere “mixing of claimed violations from *587 statutes within and without the agency’s particular area of expertise” did not justify bifurcating the resolution of the global dispute nor did it justify exempting the matter from the initial administrative dispute resolution process. Id.
As SureDeposit’s complaints included a request for a declaration as to the viability of the Division’s CPA claims, we held that “it would be inappropriate for a court to accept that invitation in advance of the Division being allowed to bring to bear, through the designated regulatory scheme, its particular expertise to render a final administrative decision regarding the CPA matters.” Converge, 383 Md. at 485, 860 A.2d at 884. We held further that an administrative determination by the Division as to the charges of SureDeposit’s alleged violations of the CPA might be helpful to a court considering the related allegations as to violations of the SDL, Converge, 383 Md. at 483, 860 A.2d at 883, even though the Division “may not [have] possessed] statutorily-recognized expertise regarding the assessment of matters arising under the SDL.” Converge, 383 Md. at 486, 860 A.2d at 885.
Converge provides a friendly analogy in the present case for two reasons. First, the Union is similar to an administrative agency in that both have non-judicial processes that must be exhausted generally before recourse to a Maryland court is appropriate. See Walsh v. Communications Workers of America, Local 2336, 259 Md. 608, 612, 271 A.2d 148, 150 (1970) (“Maryland law has long recognized the rule that a union member must exhaust the remedies open to him under the union rules before [he or she] can seek aid from the courts unless the union procedure is procedurally or substantively inadequate, fraudulent or otherwise arbitrary and illegal.”). In cases such as this one, where a union and Maryland courts have a sort of concurrent jurisdiction over a dispute that, at its heart, arises from an internal union affair, union members should first exhaust their own processes. Requiring resort first to the internal processes might have resolved creatively and satisfactorily what would otherwise blossom into conten *588 tious claims.[4] If union members decide to bring a suit after the internal process has been exhausted, reviewing courts would have the benefit of the union’s “take” on the claims.
Second, Converge teaches that, even though claims before an administrative agency may implicate matters outside of their expertise, there are good reasons nonetheless to allow a reviewing administrative agency to grapple with those parts of the dispute for which they may be able to do. Converge, 383 Md. at 483, 485-86, 860 A.2d at 883-85. Because the defamation claim is grounded in a core Union function—namely, the allegedly false and defamatory statements made by David A. McClure (“McClure”) about Lovelace’s discharge of his duties as Treasurer of the Union prior to and during a Union election campaign—the Union is equipped by its own internal processes to deal with the underlying conflict in a way that might have avoided or mitigated significantly the harms claimed to have been suffered by Lovelace, thus mitigating his provable damages.
As noted in the Majority opinion, § 22.1 of the Union’s constitution provided a mechanism for McClure to be charged with and disciplined for misconduct. Maj. Op. at 565-66, 109 A.3d at 99. McClure could have been suspended potentially from office, declared ineligible for office, or otherwise disciplined. Id. Section 14.8 permitted Lovelace to challenge the conduct or results of an election, apparently on any grounds. Maj. Op. at 565-67,109 A.3d at 99-100. The Union could have determined that Lovelace was slandered unfairly leading up to or during the election campaign and could have ordered that a new election be held. Id. Although these possible avenues of *589 remedy would not have provided Lovelace with the substantial monetary damages awarded to him by the jury, all or a substantial part of the damages may have avoided or mitigated.
The Majority seems unwilling to speculate as to whether the internal union procedures would have awarded Lovelace the full relief he sought, and instead prefers to allow the jury verdict to stand. Some speculation, though, is unavoidable on either side of our respective reasoning. See Public Service Commission, 389 Md. at 90-91, 882 A.2d at 887 (engaging in a similar speculation analysis as to the potential outcome of an administrative appeal process where an employee of the Maryland Public Service Commission was terminated); Golding, 342 Md. at 683, 679 A.2d at 563-64 (engaging in a similar speculation analysis as to the potential outcome of internal mechanisms for challenging elections of a voluntary membership organization). As noted by the Majority opinion, Lovelace convinced successfully a jury that McClure defamed him, and he obtained a verdict against the Union and McClure of approximately $425,000.00. Maj. Op. at 562-64, 109 A.3d 97-98. The jury was able to engage in a certain degree of speculation in coming to its verdict; appellate courts also are able to speculate that exhaustion of internal union procedures may have obviated the need for Lovelace’s defamation action or at least mitigated his damages. Who can say with certainty that Lovelace’s apparent ability to convince a jury would not have translated into a similarly successful effort to convince a union trial board that McClure’s remarks were false and/or that a new election would be appropriate in view of that finding. At the least, allowing the union grievance process to have run its course would seem provident in order to determine whether mitigation or elimination of the basis upon which monetary damages could be proven for any vestigial injury due to defamation or the lost election.
Lovelace’s failure to avail himself of the available union procedures in a timely manner should result in loss of the victory represented by the jury verdict here. Although such an outcome for Lovelace may be unfortunate, as enough time has passed such that the lost election can no longer be run *590 anew, the result is, in my view, required before we cast aside so quickly the exhaustion requirement. Accordingly, I would reverse the judgment of the Court of Special Appeals and remand the case to that Court with directions to vacate the judgment of the Circuit Court for Baltimore City and assess costs in all courts against Lovelace.

. The Majority opinion, in its efforts to singularize the present case, conflates pleading and proof, an obfuscation that will allow a plaintiff *582 to avoid the exhaustion requirement through mere pleading, without proof. Maj. Op. at 574-75, 109 A.3d at 104-05. The Majority opinion holds “that when a union member claims that his union and a fellow union member are liable for defaming him and seeks monetary damages, if the union's internal remedies do not provide monetary damages, they are inadequate and the union member is not required to exhaust them.” Maj. Op. at 578, 109 A.3d at 106-07 (emphasis added). This suggests that Lovelace need only have pleaded the magic words in order to skate safely past the obstacle of exhaustion. Yet in attempting to explain why Maryland should adopt a bastardized version of the Clayton test, see Clayton v. Int’l Union, 451 U.S. 679, 689, 101 S.Ct. 2088, 2095, 68 L.Ed.2d 538 (1981), the Majority opinion suggests:
Here, there is no Local 1300 procedure that could have prevented McClure from making the false and defamatory statements about Lovelace. Also, the jury found that McClure defamed Lovelace with actual malice. When a plaintiff proves, by clear and convincing evidence, that he was defamed with actual malice, damages are presumed. Therefore, no Local 1300 procedure could have adequately avoided or compensated for all of Lovelace’s damages because once he proved actual malice, the jury was justified in awarding damages without further proof of loss.
Maj. Op. at 575, 109 A.3d at 105 (emphasis in original) (footnote omitted) (citations omitted). The Majority opinion puts the cart before the horse by referencing the legal principle that defamation damages are presumed once—and only if—the plaintiff demonstrates successfully at trial that he was defamed with actual malice. Id. The Majority opinion seeks to bolster this premise by citation to a case, Jacron Sales Co. v. Sindorf, 276 Md. 580, 601, 350 A.2d 688, 700 (1976), that bears on the elements of proof at trial where the same measure of damages are presumed if a plaintiff proves defamation with actual malice. Maj. Op. at 574—75, 109 A.3d at 104-05. Because the Majority cannot make up its mind whether the rule it announces is one of pleading sufficiency or proof sufficiency, I conclude that my reliance on the comparative *583 clarity of our State administrative law principles discussed infra is preferable.

. We were asked to consider two additional questions as well, but did not reach them, resolving the appeal on the first question. Converge Services Group, LLC v. Curran, 383 Md. 462, 467 n. 2, 860 A.2d 871, 874 n. 2

. The relevant portion of the CPA provided: “If a person is aggrieved by an order or decision of the Division, he may institute any appropriate proceeding he considers necessary.” Md.Code (1975, 2000 Repl. Vol.), Commercial Law Article, § 13-407. (2004).

. For example in the present case, had Lovelace invoked timely the union process, he may have been able to secure a determination that what McClure said about him in his conduct of the role of Union Treasurer was false, similar to what he was able to convince the jury in the defamation action. Such a determination could have been made public as a means to clear the air before the Union election. Were that done, perhaps he would not have lost the election. The relative certainty of this benevolent prediction is not important, only that it is reasonably possible, in justifying requiring exhaustion of the internal Union remedies first.